## In re RIVERBANK CANNING CO.
### Patent Appeal No. 3882.

Court of Customs and Patent Appeals.
April 4, 1938.

JACKSON and BLAND, Associate Judges, dissenting.

Jackson & Webster, of San Francisco, Cal. (Charles R. Allen and William G. MacKay, both of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents, affirming that of the Examiner refusing to register the mark "Madonna" as a trade-mark for wines, on the ground that the use of the word, for such purpose, is scandalous within the meaning of section 5(a) of the Trade-Mark Act of February 20, 1905, as amended, 15 U.S.C.A. § 85(a).

The present application was filed January 20, 1934, and was published July 17, 1934. Thereafter, and within the statutory period, an opposition was filed, based on the likelihood of confusion in trade.

On September 28, 1934, the Examiner of Trade-Marks requested the Commissioner to approve jurisdiction of the application for the purpose of refusing the registration applied for, on the ground that its registration for wines would be scandalous. This request was approved on September 28, 1934, and on October 8, 1934, registration was denied by the Examiner on the ground that to register the mark "Madonna" for wines "would be offensive to the provision of section 5(a) of the Act of

February 20, 1905, which prohibits registration when a mark 'consists of or comprises scandalous matter.'" A request for reconsideration of said decision was denied by the Examiner.

Upon appeal to the Commissioner, the decision of the Examiner was affirmed, whereupon the applicant appealed to this court for a review of such decision.

The only question involved herein is whether the word "Madonna," as a trade-mark for wines, comes within the scope of the aforesaid section prohibiting the registration of any mark that "consists of or comprises immoral or scandalous matter."

The word "scandalous" is in common use, and its meaning is well understood. Dictionary definitions are as follows:

"1. Causing or tending to cause scandal; * * * shocking to the sense of truth, decency, or propriety; disgraceful; offensive; disreputable. * * *" Funk & Wagnalls New Standard Dictionary.

"2. Giving offense to the conscience or moral feelings; exciting reprobation; calling out condemnation. * * *" Webster's New International Dictionary, 1932.

This clause first appeared in the Trade-Mark Act of February 20, 1905. Its legislative history does not aid us in arriving at the intent of Congress in its enactment, and we must give to the word "scandalous" its ordinary and common meaning; applied to the case at bar, the question is whether the use of the mark "Madonna" upon wine which is not limited to a religious use may be held to be "shocking to the sense of * * * propriety," or would such use give "offense to the conscience or moral feelings."

The word "Madonna" is defined in Funk & Wagnalls New Standard Dictionary as follows: "1. My lady; signora: an old Italian form of address equivalent to madam. 2. (M-) hence, the Virgin Mary; also, a painted or sculptured representation of the Virgin. * * *"

Webster's New International Dictionary defines "Madonna" as follows:

"1. * * * My lady;—a term of address in Italian formerly used as the equivalent of madame, where signora is now substituted.

"2. a. An Italian designation of the Virgin Mary. b. A picture or a statue of the Virgin Mary."

While the primary meaning of the word "Madonna" in Italy may be, as above stated, "My lady" or "Madame," there can be no doubt that in the United States, and among all English-speaking peoples, the word "Madonna" is generally understood to refer to the Virgin Mary or to a pictorial representation of the Virgin Mary.

It is well settled that the use of a word as a trade-mark has the same effect as the use of a picture, if the word means the same as the picture. In re Maclin-Zimmer-McGill Tobacco Co., Inc., 49 App.D.C. 181, 262 F. 635; Nestle & Anglo-Swiss Condensed Milk Co. v. Walter Baker & Co., Limited, 37 App.D.C. 148; J. P. Heilbronn Co. v. Hammermill Paper Co., 48 F.2d 963, 18 C.C.P.A., Patents, 1307.

We must, therefore, in considering the registrability of the mark "Madonna" as a trade-mark, consider also whether a pictorial representation of the Virgin Mary as a trade-mark for wines would be shocking to the sense of propriety or call out condemnation.

Of course, the word "Madonna" is not per se scandalous. We do not understand that appellant contends that a mark must be scandalous per se to come within the prohibition of the statute. Every one would concede that an application to register the name of the Supreme Being as a trade-mark would be properly rejected under the provision of the statute here under consideration. It is therefore obvious that, in determining whether a mark "consists of or comprises * * * scandalous matter," consideration ordinarily must be given to the goods upon which the mark is used.

Appellant introduced into the record a number of registrations of the mark "Madonna," applied to goods of various kinds, not containing alcohol, two of which registrations were granted to appellant.

Whether such registrations were properly issued is not before us, and their issuance constitutes no reason why the registration of appellant's mark here involved should be allowed if it is in fact scandalous. See In re Ric-Wil Co., 87 F.2d 516, 24 C.C.P.A., Patents, 905.

Whether wine in itself is harmless we are not called upon here to determine, and we express no opinion upon that subject. Probably a majority of the people of the United States believe that, moderately used, it is harmless, but it is likewise true that wine, generally speaking, is included with-

in the term "intoxicating liquor"; that for a number of years, under national prohibition, the manufacture and sale of wine for use as a beverage was prohibited; that several states now prohibit such sale; and that, wherever its sale is permitted, the seller must be licensed and is subject to strict regulations governing the conduct of such business.

It is true that the Bible records that the Savior changed water into wine at the behest of his Virgin Mother at the wedding feast, and quotations can be made from the Bible commending the use of wine; but it is also true that the evils growing out of the excessive use of intoxicating beverages are probably much greater today than they were 1900 years ago.

In the case of Crane v. Campbell, etc., 245 U.S. 304, 38 S.Ct. 98, 99, 62 L.Ed. 304, the court said: "It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment."

■ That wine, like any other intoxicating beverage, may be, and often is, used to excess, is a matter of common knowledge.

■ Appellant's officers are evidently of the belief that the use of said mark would be an aid to its business. It may not be objected to by many wine drinkers, as the record tends to show by affidavits introduced by appellant; but it is a matter of common knowledge that the United States is not a wine-drinking country, such as are some of the countries of Europe, and probably only a very small minority of its people use wine even moderately. In determining whether the mark, used upon wine, is scandalous, we must consider the viewpoint, not of wine drinkers alone, but also of those who do not use wine as a beverage.

The Virgin Mary stands as the highest example of the purity of womanhood, and the entire Christian world pays homage to her as such. Her representation in great paintings and sculpture arouses the religious sentiments of all Christians.

We can readily understand that many who are accustomed to the use of wine as a beverage, remembering the use of it as a beverage in Biblical times, would not be shocked at the use of the word "Madonna" or a representation of the Virgin Mary as a trade-mark upon wine used for beverage purposes; but we also believe that there are many wine users who, knowing that the excessive use of wine is a great evil and not uncommon, would be shocked by such use of said mark upon wine, especially in view of the fact that such mark would probably be displayed, among other places, in barrooms.

■ In our opinion, to commercialize the name of, or a representation of, the Virgin Mary as a trade-mark is of very doubtful propriety, and we feel certain that its use upon wine for beverage purposes would be shocking to the sense of propriety of nearly all who do not use wine as a beverage, and also to many who do so use it; therefore, we think such use of the word "Madonna" would be scandalous and its registration prohibited under said trade-mark act.

The field is almost limitless from which to select words for use as trade-marks, and one who uses debatable marks does so at the peril that his mark may not be entitled to registration.

It follows from the foregoing that we must hold that the decision of the Commissioner was right, and it is affirmed.

Affirmed.

JACKSON, Associate Judge (dissenting).

The appellant herein is not seeking to register a representation of the Virgin Mary. As I understand it, appellant has used no such representation in connection with his allowed registrations of the term "Madonna" as applied to articles of food sold by it, and merely seeks uniformity of mark to include another well-recognized and favorably considered product, wine.

The statute denies registration to any mark that "consists of or comprises immoral or scandalous matter."

The mark per se sought to be registered is certainly not within the prohibition of the statute. It has been registered numerous times, as applied to different articles of trade.

There can be no doubt but that the word "Madonna," by association of ideas, generally refers to representations of the Virgin Mary. In painting and sculpture, great masterpieces of everlasting beauty have been made throughout all of Europe, and

now adorn churches and art galleries everywhere. They are the mold and form of ideal motherhood and purity. They excite reverential devotion in the souls of many millions of humanity. *It is not, however, so much the title but rather the depiction of the subject that moves the emotions of men.*

But can it be fairly said that the registration of the simple word "Madonna," as a trade-mark applied to material things, is shocking to the sense of propriety, or that it is offensive? Not surely in the light of the trade-mark law, under which thread, eau de Cologne, medicines, toilet soap, tooth powder, cold cream, fabrics, precious metalware and foodstuffs bear not only the expression itself, but in some instances carry the pictured representation of the Virgin. If it cannot be said that the registration of this word is "scandalous," as applied to the many articles of commerce above set forth; that it does not call for reprobation or excite a feeling of offense in being so applied, I am at a loss to see how it can reasonably come within the purview of the act as applied to wines. If the use of the trade-mark "Madonna," as applied to the goods and articles mentioned, gave offense or scandal, it seems to me it would be noised about and probably these articles would have but scanty sale.

If, as applied to wine, the registration of this word should give scandal to devout church members, that feeling, in all reason, should likewise be engendered by its application to anything not of a religious nature. With respect to some others, wine itself is considered a scandalous thing and they would, if they could, not only deny to it a name, but destroy it utterly.

I cannot agree that wine is often drunk to excess, as, in my opinion, it is a matter of common knowledge that wine users are generally not drunkards and that the habitués of barrooms are not generally wine drinkers. The excessive use of good food results in evil. Surely a glutton gives scandal comparable to the scandal caused by one who drinks alcoholic beverages to excess.

Wine seems to have been a concomitant of mankind as far back as books and tradition reach. It appears to have been what man has always considered the principal and finest product of the grape. The very nature of wine has placed it in a unique position as a beverage. It never has been and never can be classed with the harsh products of distillation which are made, not for the palate, but rather for powerful stimulating effect. Wine always has and probably always will grace boards of refinement and gentle conduct. Ordinary wine is used as a common and usual beverage by multitudes of our people instead of water. The Saviour changed water into wine at the behest of his Virgin Mother at the wedding feast; it was used at the Last Supper, and, as a matter of common knowledge, it is a part of the very core of the most sacred religious rites of many of both Christian and other faiths.

In view of what has been heretofore said in this opinion, I cannot hold that registration of the word "Madonna," as applied to wines, would shock the conscience or offend against religious belief. To hold otherwise would certainly mean that wine, of itself, is evil, since obloquy would attach to the trade-mark, good in itself, when applied to the beverage. The application herein is not for registration to use in connection with whisky, brandy, rum, beer, or the like. The right to register the mark for such goods is not before us.

The applicable law in this matter is undoubtedly restrictive and was purposely so cast by Congress, and, as such, "must be construed against the officer governed thereby. * * *" Ex parte Jefferson Electric Mfg. Co., 1917 C.D. 71, 244 O.G. 817.

There are some phases of the opinion of the majority which are not very clear and apparently somewhat contradictory. In one place it says: "It is therefore obvious that, in determining whether a mark 'consists of or comprises * * * scandalous matter,' consideration ordinarily must be given to the goods upon which the mark is used."

This would imply, as I understand it, that there are goods upon which the mark "Madonna" might be used without resulting scandal.

Later in the opinion is found the following: "In our opinion, to commercialize the name of, or a representation of, the Virgin Mary as a trade-mark is of very doubtful propriety."

This would imply that to use the mark upon *any goods* entering commerce is of doubtful propriety, which I think suggests that the trade-mark "Madonna" which was applied to various kinds of goods not containing alcohol, referred to in the opinion,

should not have been registered. This I think is an attack, at least by implication, upon the validity of those registered trade-marks and which is unnecessary to the decision of this case.

The last-quoted statement would suggest the impropriety of using the trade-mark "Madonna" upon articles connected with the practice of religion, which are manufactured and sold for profit. It is easy to conceive of articles made for the purpose of promoting religion and aiding in religious ceremonies, which are dealt with in commerce, and upon which the use of the trade-mark "Madonna" would not be regarded as scandalous by any one. On the contrary, the use of the word "Madonna" as applied to a rosary which is used in a system of prayer to the Virgin Mary is not only appropriate, but would tend to create in the minds of the users even more fervent faith and greater devotion. Obviously, this is true as applied to many different articles used in connection with religion.

The decision of the Commissioner of Patents should be reversed.

BLAND, Associate Judge, concurs in the foregoing dissent.