DYK, Circuit Judge, concurring in the judgment. The majority today strikes down as unconstitutional a century-old provision- of the Lanham Act that prohibits the registration of “immoral .... orscandalous” marks. 15 U.S.C. § 1052(a). In doing so, it notes our obligation to “construe statutes narrowly to preserve their constitutionality, when possible.” Maj. Op. 1355. -It concludes, however, that there is no such reasonable narrow construction. Id. at 1365— 57. I' think that such a saving construction is possible and that we are ■ obligated to adopt it. As an initial matter, I agree with the majority that the Supreme Court’s recent decision in Matal v. Tam, — U.S.-, 137 S.Ct. 1744, 198 L.Ed.2d 366 (2017), does not dictate the facial invalidity of the immoral-scandalous provision. Tam held only that the disparagement provision of the Lanham Act was unconstitutional because it was not viewpoint neutral; it did not address the immoral-scandalous provision at issue here. See id. at 1763^-65 (plurality op.); id, at 1765-69 (Kennedy, J., concurring in part and concurring in the judgment). So too did the opinions reserve judgment - as to - the other Lanham Act provisions. Id. at 1763 n.16 (plurality op.) (“We leave open the question whether this is the appropriate framework for analyzing free speech challenges to provisions of the Lanham. Act.”); id. at Í768 (Kennedy, J.) (“This case does not present the question of how other provisions of the Lanham Act should be analyzed under the First Amendment.”)- Nonetheless, I also agree that the immoral-scandalous provision raises some serious First Amendment questions, as the majority opinion concludes. See Maj.,Op. 1349-55.[1] I think that we are obligated to construe the statute to avoid these constitutional questions. Courts must, “where possible, construe federal statutes so as ‘to avoid serious doubt of their constitutionality.’” Stern v. Marshall, 564 U.S. 462, 477, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (quoting Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 841, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)). A saving construction of a statute need only be “fairly possible,” and “every reasonable construction must be resorted to.” Nat’l Fed’n of Indep. Bus. v. Sebelius, 567 U.S. 519, 563, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (first quoting Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932); then quoting Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895)). One such fairly possible reading is available to us here by limiting the clause’s reach to obscene marks, which are not protected by the First Amendment. Where the regulation of speech is concerned, the Supreme Court has a long history of narrowing the scope of similarly worded statutes to cover only obscene speech. The most prominent examples are the federal obscenity statutes. In 1896, the Supreme Court considered an early version of these laws, which criminalized the mailing of “obscene, lewd or lascivious” materials. Swearingen v. United States, 161 U.S. 446, 450, 16 S.Ct. 562, 40 L.Ed. 765 (1896). While acknowledging that “it might be inferred that each of those epithets pointed out a distinct offense”—the familiar canon against superfluities—the Court nevertheless construed the statute narrowly to “describ[e] one and the same offense,” namely, the mailing of obscene materials. Id. The obscenity statutes were later amended to include an even broader description of the targeted matter. Today, 18 U.S.C. § 1461 criminalizes the mailing of any “obscene, lewd, lascivious, indecent, filthy or vile article,” and § 1462 criminalizes the importation of “obscene, lewd, lascivious, or filthy” materials. Nonetheless, in a series of opinions in the 1960s and ’70s, the Supreme Court construed this broader language narrowly to apply only to obscenity in order to avoid constitutional doubts. See Hamling v. United States, 418 U.S. 87, 114, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (limiting § 1461 to obscenity to avoid a vagueness challenge); United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 129-30, 130 n.7, 93 S.Ct. 2665, 37 (L.Ed.2d 500 1973) (same with respect to § 1462); Manual Enters., Inc. v. Day, 370 U.S. 478, 482-83, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) (plurality op.) (footnote omitted) (“While in common usage the words have different shades of meaning, the statute since its inception has always been taken as aimed at obnoxiously debasing portrayals of sex.”). The Supreme Court took a similar approach when rejecting an overbreadth challenge to a Washington statute that defined “prurient” as “that which incites lasciviousness or lust,” Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 494, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), construing the statute’s reference to lust to reach only obscenity, id. at 504-05,105 S.Ct. 2794.[2] As the Supreme Court has done with the obscenity statutes, here when faced with constitutional doubt as to the immoral-scandalous provision, we should adopt a narrowing construction and limit the statute to obscenity.[3] As in the earlier Supreme Court cases, there is no question that the trademark statute bars registration of obscene marks. While the statute does not use the word “obscene” to define its scope, the absence of the word in my view makes a narrowing construction easier rather than more difficult, since it suggests that the drafters did not use the word “obscene” to differentiate “immoral” and “scandalous” material from obscenity.[4] And the fact that the immoral-scandalous provision may appear to be broader than obscenity does not preclude our adopting a narrowing construction of the statute. Contemporary dictionaries from the period before the 1905 enactment of the provision suggest that “immoral” and “scandalous” were understood as equivalent to “obscene.” For example, “obscene” was itself listed as a synonym for “immoral.”[5] Under these circumstances, we can appropriately narrow the immoral-scandalous provision’s scope to obscene marks in order to preserve its constitutionality, and we are obligated to do so.[6] The majority recognizes that we have an obligation to construe statutes to preserve their constitutionality. Maj. Op. 1355-. But the majority provides no plausible'-reason for failure to'narrowly construe'the language in § 1052(a) to avoid the evident problems created by a broader construction. To be sure, as the majority points out, the words “immoral” and “scandalous" could have a broader meaning than “obscenity,”'a broader meaning fraught with constitutional problems. But the potential breadth of the language is hardly a reason to reject a-narrowing construction; rather, it is ;the very reason-'that-a narrowing construction is appropriate. And'‘the majority offers no convincing -basis for distinguishing this case from the Supreme Court cases, discussed above, narrowing the construction' of very similar language to obscenity. .The majority appears to suggest that in those Supreme Court cases, the statutory concern with sexual representations was evident but that here that connection is absent. In fact, the central aim of the immoral-scandalous provision in this court's cases has been sexual material reflected in trademarks.[7] So too, the vast majority of PTO rejections under the immoral-scandalous provision in recent decades have related to sex.[8] The existence of isolated decisions viewing the provision as haying a secondary concern with non-sexual marks[9] cannot make a narrowing construction inappropriate. Interestingly, the scholarly analysis of the scandalous-immoral provision relied on by the majority has suggested that an amendment to the statute narrowing its scope to obscene marks would preserve the core of the provision.[10]- * * * The First Amendment does not protect obscene speech. E.g., United States v. Williams, 553 U.S. 285, 288, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Under the narrow construction I have proposed, then, the bar on the registration of obscene marks would withstand constitutional challenge. If Congress wished to expand the scope of § 1062(a), it could enact new legislation, which could then he constitutionally tested. Without this saving construction, the majority’s result leaves the government with no authority to prevent the registration of even the most patently obscene marks. Because there is no suggestion that Mr. Brunetti’s mark is obscene, however, I agree that the decision of the Trademark Trial and Appeal Board must be reversed; For these reasons, I concur in the judgment. , The majority states that I "agree[] that the scandalous and immoral prohibitions ... are unconstitutional.” Id. at 38, 93 S.Ct. 2607. As discussed more fully below, following the Supreme Court’s instructions, I would adopt a narrowing construction specifically in order to avoid these difficult constitutional questions, . I am aware of only one case in which the Supreme Court declined to construe similar .language as limited to obscenity. FCC v. Pacifica Foundation, 438 U.S. 726, 738-41, 741 n.17, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), having arisen in the broadcasting context, is quite different from the present situation. . Of course, if this were a state rather than federal statute, the different standard for narrowing constructions might dictate a different result. See, e.g., Conchatta Inc. v. Miller, 458 F.3d 258, 263-65 (3d Cir. 2006). . Our predecessor court noted that "the threshold for objectionable matter is lower for what can be described as ‘scandalous’ than for ‘obscene,’ ” which suggests that any marks meeting the threshold for obscenity would also be considered scandalous. In re McGinley, 660 F.2d 481, 485 n.9 (CCPA 1981), overruled on other grounds by In re Tam, 808 F.3d 1321 (Fed. Cir. 2015) (en banc), aff'd, — U.S. -, 137 S.Ct. 1744, 198 L.Ed.2d 366. To the extent that McGinley supports a construction of the immoral-scandalous provision that is broader than just obscenity, we are not bound by that construction given the constitutional doubts raised in this case and the intervening changes in the case law since that 1981 decision, including Tam. See, e.g., Troy v. Samson Mfg. Corp., 758 F.3d 1322, 1326 (Fed. Cir. 2014). . Immoral, Webster’s Collegiate Dictionary (1898); Immoral, Webster’s Complete Dictionary (1886). In addition, all three words were defined in terms of giving offense to morals, and "obscene” and "immoral” were specifically defined in opposition to chastity. Immoral, Webster’s Collegiate Dictionary ("inconsistent with good morals,” "unchaste”); Obscene, id, ("[offensive to chastity”); Scandalous, id. (‘‘[g]iving offense to the conscience or moral feelings”); Immoral, Black’s Law Dictionary (1st ed. 1891) ("[cjontrary to good morals”); Obscene, id. ("calculated to shock the moral sense of man by a disregard of chastity or modesty”); Immoral, Webster’s Complete Dictionary ("[n]ot moral,” "unchaste”); Obscene, id. ("[offensive to chastity and delicacy”); Scandalous, id. ("[gjiving offense”). Finally, "immoral” and "obscene” shared a number of other synonyms, including "lewd,” “impure,” and "indecent.” Immoral, Webster’s Collegiate Dictionary ("impure,” "lewd”); Obscene, id. ("indecent; impure; lewd”); Immoral, Webster's Complete Dictionary ("impure,” "lewd”); Obscene, id. (“[i]mpure,” "indecent,” "lewd”); Obscene, Black's Law Dictionary ("[ljewd; impure; indecent”). .We are under this obligation notwithstanding the fact that the government has not advocated for such a narrowing construction. For example, in Spokane Arcades, the Supreme Court adopted a narrowing construction despite the state officials’ arguments that the statute was facially constitutional and not in need of narrowing. 472 U.S. at 501-05, 105 S.Ct. 2794; see also SKF USA, Inc. v. U.S. Customs & Border Prot., 556 F.3d 1337, 1353 (Fed. Cir. 2009) ("[T]he government's arguments [against a saving construction] cannot relieve us of our obligation to construe the Byrd Amendment to avoid a finding ofuncon-stitutionalily,1’). . See In re Fox, 702 F.3d 633 (Fed. Cir. 2012) (affirming refusal to register COCK SUCKER mark for lollipops); McDermott v. S.F. Women’s Motorcycle Contingent, 240 Fed.Appx. 865 (Fed. Cir. 2007) (per curiam) (finding- no standing to oppose registration of DYKE mark); In re Boulevard Entm’t, Inc., 334 F.3d 1336 (Fed Cir. 2003) (affirming refusal to register JACK-OFF marks); In re Mavety Media Grp. Ltd., 33 F.3d 1367 (Fed. Cir. 1994) (vacating refusal to register BLACK TAIL mark); McGinley, 660 F.2d 481 (affirming refusal to register mark depicting genitalia). . See,- for example, Anne Gilson LaLonde & Jerome Gilson, Trademarks Laid Bare, 101 Trademark Rep. 1476, 1510-33 (2011), in which the'examples of recent rejections are predominantly sexual references. . See, e.g., In re Riverbank Canning Co., 95 F.2d 327 (CCPA 1938) (affirming refusal to register MADONNA mark for wine). Although LaLonde and Gilson provide other historical examples of prior rejections for religious references, LaLonde & Gilson, supra, at 1510— 13,. they also explain that the PTO has since directed that rejections based on offense to religion should be grounded in the (now-invalidated) disparagement provision rather than the scandalous-immoral provision, see id. at 1511. . See id. at 1534 (noting that narrowing "immoral" and "scandalous” to "obscene” would ensure that the provision no longer applies to marks "at the edges of scandalousness"). ■