27 C.C.P.A.(Patents)

### GENERAL FOODS CORPORATION v. CASEIN CO. OF AMERICA, Inc.
### Patent Appeals No. 4195.

Court of Customs and Patent Appeals.
Dec. 26, 1939.

Mansfield C. Fuldner, of New York City, and Thomas L. Mead, Jr., of Washington, D. C., for appellant.

Maxwell Barus, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences and holding that appellee is entitled to the registration of the trade-mark "Certora" for use on "dry skimmed milk."

In its application appellee alleges use by it of the said trade-mark since July 6, 1936.

In its notice of opposition appellant alleges that it and its predecessors have continuously used, since on or about March 25, 1921, the trade-mark "Certo" as applied to a pectin product for making jams and jellies and that the product so marked has been extensively advertised and widely sold throughout the United States; that its said trade-mark has acquired and continues to have great value.

The said mark "Certo" has been duly registered in the United States Patent Office as follows: No. 152,479, February 28, 1922; No. 152,937, March 7, 1922; No. 228,213, May 24, 1927.

The notice of opposition alleges that the word "Certora" so nearly resembles the registered mark "Certo" as to be likely to cause confusion and mistake in the mind of the public and to deceive purchasers and further alleges that the registration of appellee's mark applied to "dry skimmed milk" which is a food product and goods of the same descriptive properties as those of appellant would be injurious to appellant. These allegations are denied by appellee's answer.

Testimony was taken by both parties. The record shows that the goods of appellant consist of liquid fruit pectin put up in small bottles and intended for retail sale for household use in the making of jams and jellies. The pectin of appellant is a product obtained from apples, and when it is added to the substances from which jellies and jams are made, the jellies "jell" and the jams "jam" more easily.

The testimony of appellee shows that the merchandise to which its trade-mark is applied is a form of dry skimmed milk in powder form made by the "roller" process. The said product made by this process is claimed to possess properties which are not possessed by dry skimmed milk in powder form made from other processes such as the "spray" process. It was testified that the "roller" process dry skimmed milk is not suitable for ordinary household use because of the fact that it is not entirely soluble and it would be difficult for a woman to handle it. It is sold solely through the sales organization of appellee and only in 200-pound barrels. The sales are made directly to consumers which are, for the greater part, the baking industry for use in making bread, and, to a lesser extent, milk chocolate manufacturers. The record further shows that during the World War appellee sold a "spray" process skimmed milk in one-pound packages for household consumption. These sales were discontinued shortly after the war for the reason that the demand was insufficient for the product. It may be, however, that the insufficiency of demand might have been caused by trade conditions, as it appears to be indicated in the record that dry skimmed milk made by the "spray" process is probably suitable for household use. The description of the goods as shown in the application to be "dry skimmed milk" was believed by the examiner to be controlling upon the question of the identity of the goods of appellee, here in issue, sold under the trade-mark "Certora."

Upon the record the examiner stated as follows: "Nevertheless, the differences in the specific characteristics of the respective goods and the differences in the marks are here deemed to be cumulative. The examiner is persuaded that the cumulative effect of these differences is sufficient to justify the conclusion that the marks may be honestly used in trade by the parties without any reasonable likelihood of confusion. The record seems to show that the applicant adopted and has used the mark it seeks to register in good faith and it must be here presumed that it will continue to be honestly used by the latter."

In accordance with his above quoted reasons, the Examiner of Interferences held that appellee is entitled to the registration for which it applied.

The decision of the commissioner held that the marks of the parties are obviously quite similar but that the respective goods are not of the same descriptive properties, citing as authority B. F. Goodrich Co. v. Hockmeyer et al., 40 F.2d 99, 17 C. C.P.A., Patents, 1068, and for this reason the decision of the Examiner of Interferences was affirmed.

We agree with the commissioner that the words "Certo" and "Certora" are quite similar, but in view of the wording

of the application we cannot hold that the goods to which "Certora" may be applied are not of the same descriptive properties as those to which "Certo" is applied.

It may be, as was held by the commissioner, that dry skimmed milk made by the "roller" process, sold directly to the baking and milk chocolate trade in 200-pound barrels, does not possess the same descriptive properties as the goods of the appellant. But appellee in its application does not limit the use of the word "Certora" to such merchandise. As the application is worded the trade-mark sought to be registered could be applied to dry skimmed milk made by any process, including that made by the "spray" process. Goods of appellee made by the last mentioned process have been put up in one-pound packages and sold in retail grocery stores for household use. It is not shown in the record that the sale of the small package of "spray" process dry skimmed milk was discontinued because of inherent characteristics of the powder or that it was in any manner unsuitable for household use.

We are of the opinion that the dry skimmed milk powder which was sold in grocery stores possesses the same descriptive properties as the goods of the appellant to which the word "Certo" is applied. Both are food products; both were apparently sold in the same stores to the same class of consumers; both were inexpensive and put up in small containers. Since the words "Certo" and "Certora" are similar in appearance and sound, and since the "spray" process skimmed milk product is of the same class and possesses the same descriptive properties as the goods of the appellant, it is our opinion that confusion as to their origin would be likely and purchasers could be misled or deceived.

The proposed registration includes no restrictions as to the size or type of containers, the class of purchasers to be reached, or the manner of sale. It would, in our opinion, have been a simple matter to so draft the application of appellee that the word "Certora" would be applied to "roller" process skimmed milk, sold in bulk to the baking and chocolate making industry, if it had been the intention of the appellee to confine the application of its trade-mark to that kind of merchandise. Such was evidently not the intention.

On the record here, if registration were granted appellee would obtain all the advantages accruing to the registration of its trade-mark, not only in marketing its "roller" process dry skimmed milk powder in the manner and form in which it does, but also in marketing dry skimmed milk made by "spray" or any other process and in any kind or size of container, including a bottle.

The scope of use of the word "Certora" as set forth in the application, together with a careful examination of the record and the briefs and authorities cited, convinces us that the goods as described in appellee's application and the goods of appellant possess the same descriptive properties and since the words "Certo" and "Certora" are obviously quite similar, in our judgment the opposition of appellant should have been sustained. The decision of the Commissioner of Patents is therefore reversed.

Reversed.