34 C.C.P.A. (Patents)

# W. B. RODDENBERY CO. v. KALICH.

## Patent Appeal No. 5225.

Court of Customs and Patent Appeals.

Dec. 9, 1946.

A. W. Murray, of Chicago, Ill., for appellant.

Jackson, Webster & Read, of Washington, D. C. (Wm. G. MacKay and Chas. R. Allen, both of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The appellant, W. B. Roddenbery Co. (hereinafter referred to as Roddenbery), has appealed here from the decision of the Commissioner of Patents, 65 USPQ 254, overruling that of the Examiner of Trademark Interference which sustained Roddenbery's notice of opposition to appellee Kalich's application for the registration of the notation "Big Patch" as a trade-mark which, as applied for, was for fresh vegetables. The notice of opposition was based upon Roddenbery's use of its registered trade-marks, "Cane Patch" for cane syrup, "Pickle Patch" as applied to pickles and pickle relish, and "Patch" for table syrup and peanut butter.

The examiner held, among other things, that since the applicant's goods and Roddenbery's goods were all food products there would be likelihood of confusion. This is obviously true, because "fresh vegetables" would include cucumbers and other vegetables to be pickled and confusion might result.

The examiner's decision was rendered on July 6, 1944. On July 27, 1944, Kalich sought to amend her application by substituting for the language used the following:

"Fresh vegetables—namely, fresh lettuce." On July 31, 1944, after appeal had been taken to the commissioner by Kalich on July 28, 1944, the examiner overruled the motion to amend on the ground that since the final hearing was had on June 29, 1944, and decision was rendered on July 6, 1944, and the motion was filed subsequent to the decision it was therefore untimely and involved "merely piecemeal prosecution."

The commissioner in his decision on April 28, 1945, permitted the amendment and regarded the application as being confined to a trade-mark use of the term "Big Patch" on fresh lettuce and reversed the decision of the examiner, stating: In the absence of the amendment to the application * * *, I should be inclined to agree with the examiner of interferences that applicant's goods include some items having the same descriptive properties as pickles; for there are certain fresh vegetables from which pickles and pickle relish are made. But so far as I am aware, lettuce is never used for that purpose.

Roddenbery in this court has assigned error against the action of the commissioner in entering the amendment, which, to say the least, seems to us to be a rather unusual proceeding. However, we prefer to base our decision upon the merits of the controversy even if Kalich's application must be confined to lettuce alone.

That fresh lettuce and the food products sold under the trade-marks of Roddenbery are of the same descriptive properties we have no doubt, under well-settled decisions of this and other courts. It is generally understood that modern practices in dealing in food products involve the production, advertising, and selling of many different products of varied descriptions under a single trade-mark. This is also true of drugs and certain other articles. By reason of this practice, the purchasing public of these articles are probably more likely to be confused by virtue of the similarity of trade-marks. Lettuce is sold by the same people to the same customers who purchase pickles and pickle relish and peanut butter. All of the commodities are of vegetable origin. The seller of pickles would seem to have the right to extend its trade-mark, in the natural extension of its business, to green cucumbers and other articles, raised, marketed, advertised, and sold by the same people to the same class of customers.

In California Packing Corporation v. Tillman & Bendel, Inc., 40 F.2d 108, 17 C.C.P.A. (Patents) 1048, this court, when it first began to exercise its jurisdiction in appeals from the Patent Office in trade-mark matters, early recognized this growing tendency on the part of the big handlers of food products and held that if coffee, particularly in one-pound cans, were sold from the same shelves by the same people to the same class of customers along with "Del Monte" fruits and vegetables confusion would be likely to result and the purchaser probably would be misled as to the origin of the merchandise. There we cited the case of Yale Electric Corpoation v. Robertson, 2 Cir., 26 F.2d 972, 974, to the effect that there must "Be enough disparity in character between the goods of the first and second users as to insure against confusion."

Also cited in the California Packing Corporation case was the case of The I. E. Palmer Co. v. Nashua Manufacturing Co., 34 F.2d 1002, 17 C.C.P.A. (Patents) 583, which was a decision by this court following the ruling in California Packing Corporation v. Price-Booker Mfg. Co., 52 App.D.C. 259, 285 F. 993, 995, where it was stated: "Whenever it appears that confusion might result, it is because the goods have the same descriptive properties."

Numerous cases decided by this court subsequent to the holdings referred to supra followed the principles laid down in those cases, and we think most of them are clearly in point in the decision of the instant issue. In Cheek-Neal Coffee Co., Maxwell House Products Co., Inc., (Substituted Opposer) v. Hal Dick Manufacturing Co., 40 F.2d 106, 17 C.C.P.A. (Patents) 1103, it was held that horse-radish, olive spread, and similar goods were of the same descriptive properties as coffee and tea. In Martorelli, Etc. v. Atlantic Macaroni Co., Inc., 111 F.2d 494, 27 C.C.P.A. (Patents) 1171, this court affirmed

the decision appealed from which held that canned peeled tomatoes and tomato paste, fish preserved in oil, canned vegetables, rice, coffee and tea were goods of the same descriptive properties as macaroni, vermicelli and noodles.

The following cases are cited in support of our conclusion herein: Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.2d 116, 17 C.C.P.A.(Patents) 1034; National Biscuit Co. v. Sheridan, 44 F.2d 987, 18 C.C.P.A.(Patents) 720; Revere Sugar Refinery v. Salvato, 48 F.2d 400, 18 C.C.P.A.(Patents) 1121; Noll v. Krembs, 73 F.2d 491, 22 C.C.P.A. (Patents) 722; California Prune & Apricot Growers Association v. Dobry Flour Mills, Inc., 101 F.2d 838, 26 C.C.P.A.(Patents) 910; General Foods Corporation v. Casein Company of America, Inc., 108 F. 2d 261, 27 C.C.P.A.(Patents) 797; William S. Merrell Co. v. Anacin Co., 109 F.2d 339, 27 C.C.P.A.(Patents) 847; White House Milk Products Co., Etc. v. Dwinell-Wright Co., 111 F.2d 490, 27 C.C. P.A.(Patents) 1194; Dwinell-Wright Co. v. Gundlach, Etc., 121 F.2d 639, 28 C.C. P.A.(Patents) 1348.

Kalich here stresses the fact that the mark for the registration of which her application was filed is a composite mark consisting of a pictorial representation of a small boy, with big patches on the seat of his pants, looking over a large patch of lettuce, with the words "Big Patch" in large letters at the top of the enclosed indicia and that there being a difference in the goods and a difference in the marks there is no likelihood of confusion, and cites a number of cases in which this court, in holding that there was non-likelihood of confusion, emphasized the fact that the marks and goods were different. This and other courts have frequently said that in the case of a trade-mark which consists of words accompanied by other pictorial indicia the portion of the mark which would be likely to indicate origin would be the words used and that this is particularly true in these times when resort is so frequently made to radio advertising. In the instant case it is obvious that the word "Patch" is the principal feature of the mark which would serve the purpose of designating the origin of the goods. Kalich has here taken this dominant feature of the mark and applied it to goods in such a way, we think, as to promote the possibility of confusion as to the origin thereof.

The decision of the commissioner, for the reasons stated, is reversed.

Reversed.