39 C.C.P.A.(Patents)
### HART SCHAFFNER & MARX v. EMPIRE MFG. CO.
Patent Appeal No. 5889.

United States Court of Customs and Patent Appeals.
June 24, 1952.

O'Connell, J., dissented.

Rogers & Woodson, William T. Woodson, Beverly W. Pattishall, Chicago, Ill., Jewett, Mead, Browne & Schuyler, Thomas L. Mead, Jr., and Francis C. Browne, Washington, D. C., for appellant.

Charles R. Allen, Washington, D. C. (Charles R. Allen, Jr., Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal in a trade mark opposition proceeding from the decision of the Commissioner of Patents, 88 USPQ 287, reversing the decision of the Examiner of Interferences which sustained the contention of opposer that the marks "Dixie Weave" and "Dixie Leader" are confusingly similar.

This proceeding is governed by the provisions of the Lanham Act (Trade-Mark Act of 1946), specifically section 2(d), 15 U.S. C.A. § 1052(d), relating to confusion or deception of purchasers. Both parties filed briefs and were represented at the hearing. The record reflects testimony of but one witness, he representing the opposer. Several exhibits were received in evidence.

Appellee, hereinafter referred to as the applicant, is a corporation doing business as the Empire Manufacturing Company, domiciled at Winder, Georgia. The appellant, hereinafter referred to as opposer, is a corporation doing business as Hart Schaffner & Marx and domiciled at Chicago, Illinois.

Under date of September 16, 1947, applicant filed an application for registration of its trade-mark "Dixie Leader," serial No. 534,612, as applied to work clothes, namely, overalls, jumpers, dungarees and shirts. Applicant alleges the date of first use of its mark in interstate commerce as January 15, 1940.

The opposer based its opposition on the ground of its ownership of the mark "Dixie Weave" as applied to men's suits, comprising coats, vests and trousers. That mark was first registered September 5, 1916, and has been regularly renewed with the word "Weave" disclaimed except in connection with the word "Dixie."

The mark "Dixie Leader" is composite in form. The involved words are in large letters and appear at the top of a rectangular label. Immediately beneath is the slogan "A Sure Bet" which is disclaimed, and below the slogan is a circle containing a picture of the head of a horse. In the background of the label is a scene depicting a race track showing four jockeys astride their horses with one horse several lengths in the lead.

According to the specimens filed with the notice of opposition, the trade-mark "Dixie Weave" is in smaller type than the words "Hart Schaffner & Marx" on the label used on the product manufactured by the opposer. The record also shows that the fabric used in the opposer's product is of a porous weave and light in weight.

There is no dispute but that the opposer is the prior user and the only issue here, as was true before the tribunals of the Patent Office, is whether the mark sought to be registered by applicant bears such a resemblance to the mark of the opposer as to be likely, when applied to the involved goods, to cause confusion or deception of the purchasers.

560

The Examiner of Interferences, in sustaining the opposition, held that in the composite mark the notation "Dixie Leader" was clearly the dominant feature of the applicant's mark and was the feature upon which purchasers would rely in identifying applicant's goods. He was also of the opinion that although there are specific differences between the articles of apparel involved herein, the similarity between "Dixie Leader" and "Dixie Weave" is such that the concurrent use by the parties of their marks is likely to cause confusion or deception as to the origin of the goods of the parties.

The commissioner, in reversing the decision of the examiner, held that the word "Dixie" is not, as contended by counsel for the opposer, the dominant part of either mark; that although the goods of the respective parties belong to the same general class of merchandise, there is a well-recognized difference between the two. He further held that the involved marks should be considered in their entireties and that the meaning inherent in each should not be ignored. He thus concluded that confusion as to the origin of the goods of the parties would not be likely to arise in the mind of the average customer.

In its notice of appeal to this court, opposer sets out eighteen assignments of error, each of which has been given careful consideration. The cases cited by counsel for both parties have also been examined but, in our opinion, none of them are applicable to the facts of this case.

The only issue here, as below, is whether concurrent use of the two marks upon the respective goods of the parties would be likely to cause confusion or deception as to origin in the mind of the purchasing public.

It is obvious, of course, that the word "Dixie" is common to both marks but, in our opinion, there the resemblance ceases.

The word "Weave" certainly does not look like the word "Leader"; neither do the two words sound alike nor do they have the remotest similarity in meaning. Ostensibly, the opposer intended to describe the character of its material, whereas the applicant presumably attempted to give his product a laudatory description.

While it is true the involved goods are in the same general category of merchandise, we believe there is a distinct difference between light-weight and porous weave coats, vests and trousers obviously designed for dress purposes and those clothes designed for work purposes, namely, overalls, jumpers, dungarees and shirts. Although the single witness stated that the opposer also sold shirts and jumpers, there is no evidence that such goods were ever sold under the mark "Dixie Weave."

The opposer contends that since the word "Weave" has been disclaimed, it is thus left with only the word "Dixie" and therefore that to permit the registration of the mark "Dixie Leader" would be injurious to opposer. Such contention is, in our opinion, untenable. The word "Dixie" is certainly not susceptible of exclusive appropriation. It is a term generally used to indicate the southern part of the United States and as such belongs in the public domain.

Since we do not believe the involved marks look alike, sound alike, or have the same meaning, we are of the opinion that their concurrent use on the respective goods of the parties would not be likely to cause confusion in the mind of the purchasing public; therefore, the decision of the Commissioner of Patents is affirmed.

Affirmed.

O'CONNELL, J., dissents.

JACKSON, J., retired, recalled to participate herein.