45 C.C.P.A. (Patents)

**SEARS, ROEBUCK AND CO., Appellant,**

v.

**Leo C. HOFMAN, Appellee.**

**Patent Appeal No. 6359.**

United States Court of Customs and Patent Appeals.

May 29, 1958.

Rehearing Denied Oct. 1, 1958.

Frank H. Marks, Chicago, Ill. (Ivan P. Tashof, New York City, of counsel), for appellant.

Leo C. Hofman, pro se.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, acting for the Commissioner, reversing

the decision of the Examiner of Interferences, and holding appellee entitled to registration of the mark "Royal Plumage" as applied to hosiery, over the opposition of appellant's prior registration and use of its mark "Royal Purple" also for hosiery. The record consists of a stipulation of facts together with certain exhibits. We quote therefrom with respect to appellant's mark:

> "Sears adopted and began using a trade-mark comprising the words 'Royal Purple', in conjunction with a plume design, as shown on labels hereinafter referred to, for hosiery for women and children, about July 15, 1927, and has continuously used said trade-mark on such goods and in the advertising thereof from said date up to the present time. Sears' sales and advertising of hosiery under said Royal Purple trade-mark have extended throughout the United States, including the State of Maryland, and said sales have been large from the start, totaling over $300,000,000 for the period 1927 to 1953, inclusive.

> "Sears' advertising of said goods under said Royal Purple trade-mark has totaled over $10,000,000 for the same period of time."

The record before us is silent with respect to applicant's use of his mark.

Although we have given consideration to the various arguments regarding the respective designs used in conjunction with the marks, the decisive question is whether concurrent use of the marks as a whole would be likely to result in confusion or deception.

It is, of course, obvious that the word "Royal" is common to both marks. Indeed, by applying the process of judicial trademark vivisection to the extreme, it is possible to establish other common characteristics; however, when the marks are viewed in their entirety, as is usually done in the market place, we think there are sufficient differences in appearance, sound and meaning to avoid likelihood of confusion.

■ For example, the word "Royal" is not arbitrary, but is a suggestive word frequently used to indicate high quality. It has been consistently held that trademarks will not ordinarily be held confusingly similar solely because each of them includes a word of that type. Lauritzen & Co., Inc. v. Borden Co., 239 F.2d 405, 44 C.C.P.A., Patents, 720, and authorities there cited.

■ Moreover, "Royal Purple" is a unitary term defined by both Funk and Wagnall and Webster as meaning a particular shade of purple. "Royal Plumage" has no such meaning. Accordingly, while the former would ordinarily be understood as referring to color, the essential impression given by the latter is that of plumes, with no particular color association.

While appellant's registration includes, as a comparatively minor feature, a picture of a crown surmounted by three feathers, and it appears that the same or similar representations of feathers have been used by appellant in conjunction with its "Royal Purple" mark, it does not appear that appellant has ever used the word "plumage" in connection with its marks. As above indicated, we are of the opinion the pictures used were not of such a nature as to be likely to result in confusion with appellee's mark.

Finding no error, the decision appealed from is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate, was present at the argument of this appeal but did not participate in the decision.

O'CONNELL, Judge (dissenting).

The stipulated testimony in this case shows that appellant commenced its use of the "Royal Purple" trademark, as applied to hosiery in July 1927—more than eighteen years prior to appellee's alleged first use of its "Royal Plumage" mark—and that for the period from 1927 to 1953 inclusive appellant spent more than ten million dollars in advertising under its

mark and sold more than three hundred million dollars worth of goods thereunder. Under such circumstances, the rule that doubts as to confusing similarity of trademarks will be resolved against the newcomer applies with particular force.

Each of the marks here involved begins with the word "Royal," while the second words, "Plumage" and "Purple" are of approximately the same length, and both begin with "P" and end with "e." Moreover each is accompanied by a picture or suggestion of feathers or plumes. It is evident, therefore, that upon casual inspection, they present a marked similarity in appearance. Further, both "purple" and "plumage" are commonly associated with royalty or high rank, and the total effect most likely to be given by each mark is that of luxury or high quality; probably accompanied by a suggestion of feathers or plumage. As was properly pointed out by the Examiner of Interferences, appellant's use of a picture of plumes with its mark has the same effect as the use of a corresponding word. Weyenberg Shoe Manufacturing Co. v. Hood Rubber Co., 49 F.2d 1046, 18 C.C. P.A., Patents, 1449; In re Riverbank Canning Company, 95 F.2d 327, 25 C.C. P.A., Patents, 1028.

While the majority opinion seems to question the propriety of considering portions of the marks separately, that practice has frequently been followed in decisions of this court. Aluminum Air Seal Mfg. Co. v. Trim-Set Corp., 208 F.2d 374, 41 C.C.P.A., Patents, 764; Lauritzen & Co., Inc. v. Borden Co., 239 F.2d 405, 44 C.C.P.A., Patents, 720; Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 44 C.C.P.A., Patents, 880. As was said in the first-cited case [41 C.C.P.A., Patents, 764, 208 F.2d 376]:

"In this respect, it is true that in the final analysis the contested marks should not be judicially dissected or component parts measured one against the other, as the purchaser himself does not dissect the marks, but is confused, if at all, by the mark as a whole. From a purely objective standpoint, however, existing and apparent similarities in significance, sound, and appearance between constituent parts of trade marks cannot be overlooked as they provide a rational foundation upon which a conclusion may be formed as to the general subjective impression made by the marks upon the buying public."

It is to be noted that the majority opinion in the instant case dissects the marks to the extent of according separate consideration to the word "Royal," used in both of the contested marks as the dominant part in each of them.

No doubt there are certain shades of difference between the marks which are apparent upon side-by-side comparison, but that is not the way in which the marks are encountered by prospective purchasers, and it does not seem reasonable to expect such persons to remember, perhaps after an interval of several months or more, that the "Royal" mark with the picture of plumes indicates one origin of the goods while the "Royal" mark with the word "Plumage" indicates another.

With his right to choose from not only the entire English language, including pidgin English, the foreign languages, and also all the possible mathematical permutations and combinations of all the letters of the alphabet and numerical digits, it would appear that appellee should have selected a mark bearing a less striking resemblance to the one extensively used and widely advertised by appellant for identical goods. In my opinion the Examiner of Interferences properly sustained the opposition and the decision of the Assistant Commissioner should be reversed.