47 CCPA

**LIBBEY–OWENS–FORD GLASS COMPANY**

**v.**

**GENERAL ALUMINUM WINDOW CO., Inc.**

**Patent Appeal No. 6495.**

United States Court of Customs and Patent Appeals.

March 15, 1960.

---

948

Harness, Dickey & Pierce, Detroit, Mich. (John A. Blair, Detroit, Mich., of counsel), for appellant.

John H. Lewis, Jr., Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.[*]

MARTIN, Judge.

This appeal is from a decision of the Commissioner of Patents, acting through the Assistant Commissioner, reversing the Examiner of Interferences and dismissing an opposition to the registration of "Therm-O-Lite" on the Principal Register.

Appellant's registered mark, "Thermopane," [1] has been used by Libbey-Owens-Ford (L-O-F) since 1934, when it was acquired from the predecessor in use, Thermopane Company, to identify insulating glass. Besides insulating glass, L-O-F manufactures and sells sheet glass, plate glass, safety glass, and various other flat glass products. The particular type of unit with which the "Thermopane" mark is used is one which has two or more pieces of flat glass, each pair of pieces being hermetically sealed around the edges so that a dead air space of one-fourth or one-half inch is maintained therebetween. Such units are used as windows in buildings and display cases, in refrigeration cars, in trailers, etc., to prevent frosting and heat loss. When used in a building these units replace conventional single pane windows, and because of their insulating

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Registration No. 386,704 issued April 22, 1941.

property, obviate the necessity for storm windows as well.

"Therm-O-Lite" combination units comprise an aluminum frame assembly which carries both glass and screen sections, which sections can be arranged to ventilate during warm weather and insulate against heat loss during colder weather when used in conjunction with conventional doors and windows of homes. They are secondary units in contradistinction to the products of L-O-F which are primary units.

The sole issue in this case is whether appellee's mark, "Therm-O-Lite," so resembles that of appellant, as to be likely, when applied to appellee's goods, to cause confusion, mistake, or deception of purchasers as to source or origin.

The Assistant Commissioner held that builders and dealers were not likely to be confused by the marks, and that it was "highly improbable that one seeking to purchase combination storm windows and doors would be likely to think of, or consider the purchase of, fixed window panes of insulating glass." She felt the goods to be so commercially different that a purchaser is not likely to think that there is any connection between the producers.

Appellant maintains that the marks have identical meanings, that "lite," a corrupted form of light, has a dictionary meaning of "pane." Appellant feels that the Assistant Commissioner based her decision upon the difference in the goods, and asserts such a test is wrong, contending the proper test to be whether purchasers would think that the goods came from the same source. Appellant contends that the goods are competitive in a sense, i. e., that one building a house would have the choice of using "Thermopane" or, alternatively, conventional windows with storm sash. Therefore, the choice of one would preclude the other. Appellant also points out that the goods are similar at least in that both utilize at least two panes of glass. L-O-F finally asserts that its mark is famous,[2] and

that it is desirous of preventing the registration of any mark which would utilize "thermo" in conjunction with glass and windows.

Appellee is of the opinion that the real crux of this case is the difference between the products, strongly relying upon the fact that its product is of aluminum, and contending that the glass used therein is incidental. Appellee does not agree that the "Thermopane" and "Therm-O-Lite" units are alternative, pointing out that one is a primary, and the other a secondary, unit. It is said that "lite" connotes lightness in weight (aluminum storm sash is lighter than the older wooden storm sash), that "Therm-O-Lite" is suggestive of that property, and that the ordinary purchaser would not think of "lite" in the sense of "pane." Appellee contravenes appellant's assertion that it is reasonable for the two manufacturers to expand into each others' fields. Finally, appellee asserts that there is a sufficient difference between the goods to obviate any likelihood of confusion and that no actual confusion was proven.

█ In considering the issues which have been presented here it might be well first to discuss the nature of the goods of the litigants. Although their products are not the same they certainly are related, and contrary to appellee's contention, we believe they do constitute alternatives. The use of appellant's "Thermopane" insulated glass should preclude the use of appellee's "Therm-O-Lite" storm windows. Conversely, a reasonable person would not use "Thermopane" glass to insulate a conventional glass window but would instead use "Therm-O-Lite" storm windows or a similar product. Furthermore, it does not tax the imagination to assume that appellant could reasonably extend its business to include storm windows and doors which prospect is also a factor to be considered. W. B. Roddenbery Co. v. Kalich, 158 F.2d 289, 34 C.C.P.A. 745.

**2.** Appellee concedes that it is at least a "wellknown mark."

Next we should turn our attention to the litigants' relationship with the public in connection with their products. According to the evidence, between 1944 and 1955 appellant spent almost three and one-half million dollars in advertising its "Thermopane" units in both consumer and trade magazines, as well as via informative booklets directed to the consumer and various building trades. Since 1944 almost six million "Thermopane" units have been sold, mostly to homeowners, but also to building contractors, refrigerator manufacturers and car builders.

Appellee's trademark "Therm-O-Lite" has been used since 1949 to identify its combination storm windows and doors. "Therm-O-Lite" storm sash has been advertised in newspapers, by radio, television and direct mail, and at trade conventions and home shows. Although appellee does not sell directly to the ultimate consumer, it is obvious that such an advertising program was used not only to acquaint prospective dealers with its product but also to attract the ultimate purchaser. It is apparent that both parties directed their advertising to the same classes of purchasers and are interested in identifying their products in the mind of the general public by their respective trademarks. Therefore, if the trademarks are confusingly similar it is likely that purchaser confusion, mistake or deception would result.

As to the trademarks themselves, "Thermopane" and "Therm-O-Lite," their similarities are readily apparent as are their dissimilarities. Both have two syllables, the first, "thermo," being common to both. The second, "pane" and "lite," although different in sound and appearance, would have the same connotation to the general public even though appellee contends that the use of "lite" was predicated upon its desire to emphasize the lightness of aluminum in contrast to the ponderousness of wood. "Thermo" although suggestive, but not descriptive, is the dominant feature of both trademarks.

■ Even though a consideration of portions of marks may be a valuable aid in deciding likelihood of confusion, the ultimate test to resolve this issue is a comparison of the trademarks in their entireties since that is the form in which they appear to the general public.

■ In this instance, when we consider "Thermopane" and "Therm-O-Lite" in this manner, especially in view of their common dominant feature, we come to the conclusion that they would be likely to produce in the mind of the general public, considering the functional similarity of the goods of the parties, the impression that the goods have a common origin. We feel that prospective purchasers of "Therm-O-Lite" units might well think that they were a product of the company marketing "Thermopane."

In view of the foregoing the decision of the Assistant Commissioner is reversed.

Reversed.

KIRKPATRICK, Judge (dissenting, with whom WORLEY, Chief Judge, joins).

The court, reversing the decision of the Commissioner, holds that the appellee's mark "Therm-O-Lite" must be refused registration because it so resembles "Thermopane" (the appellant's registered trademark) that it is likely, when applied to the goods of the appellee, to cause confusion or mistake or deception of purchasers as to source or origin. I am unable to agree. It seems to me that the marks themselves, considered in the light of well established principles, clearly negative the likelihood of such confusion and that the circumstances under which they are used do not disturb that conclusion.

Each of the two marks consists of two parts, "Thermo" in the one and "Therm-O" in the other being the first part of each combination. Not only are these syllables practically identical, but they have long been used as prefixes in describing or advertising countless articles of commerce. I agree with the majority

that "thermo" is not strictly descriptive, and I also agree that it is suggestive. It carries various connotations depending on the goods with which it is used. When used with contrivances designed to protect against heat, cold or changes of temperature, it conveys the idea of insulation—due perhaps to the almost universally known use of "thermos" with insulated flasks, jugs, bottles, etc. It can hardly be argued that "thermo" as a prefix is not in the public domain.

In May Department Stores Co. v. Schloss Bros. & Co., Inc., 234 F.2d 879, 881, 43 C.C.P.A. 980, this court said, "It is well settled that combinations of letters which are descriptive of the goods or properties thereof will not be accorded as great weight in considering whether marks are confusingly similar, as words or combinations of letters which are purely arbitrary." This rule has been consistently applied by this as well as other courts. See Hart Schaffner & Marx v. Empire Manufacturing Co., 197 F.2d 558, 39 C.C.P.A. 1042 (Dixie Leader and Dixie Weave); House of Worsted-Tex, Inc. v. Deering Milliken & Co., Inc., 233 F.2d 333, 43 C.C.P.A. 908 (Worsted-Tex and Worsterlon); May Department Stores Co. v. Schloss Bros. & Co., supra (Duro-Style and Durosheen); Sears, Roebuck & Co. v. Hofman, 258 F.2d 953, 46 C.C.P.A. 708 (Royal Purple and Royal Plumage); Flintkote Co. v. Tizer, D.C., 158 F.Supp. 699, affirmed at 3 Cir., 266 F.2d 849 (Flexachrome and Flextone). It applies fully to the present case. "Thermo" is quite as suggestive and just as nearly descriptive as "duro" or "flex" in the cases above cited.

Of course, in any issue of confusing similarity the entire marks must be considered, but every part of a mark need not be given the same weight, The Hygienic Products Co. v. Huntington Laboratories, Inc., 139 F.2d 508, 31 C.C.P.A. 773, and if one part of each of two trademarks is a descriptive, suggestive or commonly used term, likelihood of confusion will not be found to exist if the other parts are distinctive enough to avoid confusion. It seems to me that

the majority has not taken into account the well established principle of the above cited decisions.

What the court said in Eastern Wine Corporation v. Winslow-Warren, Ltd., 2 Cir., 137 F.2d 955, 959, is applicable to the position of the opposer in this case. Holding that "Chateau Montay" did not infringe "Chateau Martin," the court said, "Here the plaintiff chose to build its business around the use of a name 'Chateau' which was previously in common use in advertising wines. It took the risk that competitors, old and new, would also use that common name * * *. Plaintiff, therefore, could not and did not pre-empt every use of 'Chateau' when coupled with every other name beginning with the thirteenth letter of the alphabet, nor even with one so beginning and consisting of six letters." The majority opinion makes the appositeness of these remarks clear by pointing out the appellant's major objective as announced by it: "L-O-F finally asserts that its mark is famous, and that it is desirous of preventing the registration of any mark which would utilize 'thermo' in conjunction with glass and windows."

I do not see how there could be any likelihood of confusion between the distinguishing parts of the two marks now before us—"lite" and "pane." They do not sound alike and they do not look alike. As to having the same meaning: Similarity of meaning is only one factor to be taken into consideration on the question of likelihood of confusion, and it seems to me that, unless the meanings of the two words are to all intents identical, it should not be controlling, absent the remotest similarity of sound or appearance. Here the meanings of the two words, "lite" and "pane" are far from identical. Assuming that "lite" is equivalent to "light," it appears from the dictionary definitions that while "light" may mean a glass window pane, it may just as well mean an opening in the wall of a building without any glass in it.

As to the use of the marks by the respective parties. The appellant is a glass manufacturer. It makes various flat

glass products. So far as appears, it has never entered the field of structural frames or parts of windows other than the glass panes although, of course, there is always a possibility (though no showing of a probability) that it will do so. The appellee does not manufacture the glass which it uses. The products with which it proposes to use the mark are aluminum storm windows and storm doors. It is, of course, true that the products of the parties are to a certain extent competitive but certainly not so directly as the wines in the Eastern Wine Corporation case, supra, or the tiles in the Flintkote case, or the hosiery in the Sears, Roebuck case.

Even if there were a possibility of confusion of source, the Trademark Act, 15 U.S.C.A. § 1051 et seq. requires more than that. What is necessary to disqualify a mark for registration is a likelihood (decidedly more than a mere possibility) of such confusion and, in my judgment, the opposer has failed to show any such likelihood.

I would, therefore, affirm the decision of the Commissioner.