GENERAL CABLE CORPORATION, Appellant,

v.

REPUBLIC WIRE AND CABLE COR-PORATION, Appellee.

Patent Appeal No. 7099.

United States Court of Customs and Patent Appeals.

Feb. 20, 1964.

Rich, J., dissented.

Emery, Whittemore, Sandoe & Graham, New York City, (George J. Schottler, New York City, of counsel), for appellant.

Robert H. Fraser, Fraser & Bogucki, Los Angeles, Cal., and I. J. Crickenberger, Thomas, Crickenberger & Moore, Arlington, Va., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

General Cable Corporation appeals from the decision of the Trademark Trial and Appeal Board dismissing appellant's opposition[1] to registration by appellee, Republic Wire and Cable Corporation, of "SUPER–FLEX" as a trademark for "Electrical Control Cable, Namely Traveling and Lighting Cable for Elevators."

The opposed application[2] claims first use on May 1, 1957. Appellant has pleaded a number of its prior trademark registrations. In lieu of taking testimony, the parties entered into a stipulation of facts.

The stipulation on behalf of appellee recites, in material substance, that:

Its principal business is the sale and distribution of traveling and lighting cables for elevators; that the mark is not used directly or indirectly on any of its other products; that in excess of $20,-000 has been spent since May 1957 in advertising the goods[3] under the mark; that advertising, in the main, has been by direct mail distributions to known potential customers; that it directs no advertisement to the general public or to electrical wholesalers with respect to its goods sold under the mark; that its customers use the mark in placing orders and in specifying types of the goods; that neither in response to advertisements nor in any other way, have any requests for goods been received bearing any other mark; that it has not encountered any confusion of the mark with any other mark; that the goods are used to provide electrical connection between electric power and signal sources in a building and a moving elevator, serving to connect points which may be several hundred feet distant from each other; that the goods vary in size and when sold in high quantity (1000' or more) the price varies from approximately $100.00 per 1000' to approximately $1,200.00 per 1000' according to the number of internal conductors which may run from two to thirty or more; that the goods must have abrasion resistant surfaces and be insulated against the effects of oils, greases, water, fumes and ozone; that they must meet local, state and federal requirements; that the potential market for the goods sold under the mark consists of five to six hundred independent elevator maintenance or elevator installation contractors, largely members of the National Association of Elevator Contractors; that replacements are sold to elevator maintenance companies and new installations and modernizations to elevator contractors; that the goods are sold throughout the United States to at least 125 different customers and that the representatives of purchasers who control the placement of orders are the owners themselves, their purchasing agents or installation engineers.

The stipulation on behalf of appellant recites, in material substance, that:

---

1. No. 40,242 filed Aug. 1, 1960.

2. Serial No. 77,142 filed July 6, 1959.

3. "Goods" hereinafter refers only to "traveling and lighting cables for elevators."

It has adopted and uses throughout the United States a series of marks which include the syllable "SUPER" and that such use has been substantially continuous since original adoption.

The marks listed are:

"SUPER–SERVICE"; [4] "SUPER-LITE"; [5] "SUPER 6–T"; [6] "SUPER THERMAX"; [7] "SUPERSHEATH"; [8] "SUPERTUF"; [9] "SUPERTEL" asserted prior use for electrical wires and cables, and "SUPER–LINE." [10]

The stipulation further recites that:

The products sold under the various marks include a complete line of rubber and thermoplastic insulated power, lighting and control cables for all standard types of service and many special constructions; that the cables are supplied with coverings and sheaths of various types designed for uses as control cables, ornamental pole and bracket cables, power cables, street lighting cables, telephone cables and numerous other uses; that among the various assortments of cables are elevator traveling cables employed for connection of control or lighting circuits of an elevator to the fixed source of supply; that these traveling cables are designed and used to perform functions similar to those of appellee's goods; that appellant has manufactured and sold them continuously for more than thirty years and that its customers for same include elevator contractors, and elevator installation and maintenance contractors; that sales of elevator traveling cables during the period from January 1, 1957 to December 31, 1960 were in excess of $850,000; that advertisement of these cables is confined to descriptions and listings in appellant's catalogues; that ap-

pellant owns and operates manufacturing plants and facilities in twenty-two locations and maintains sales offices in sixty-six cities throughout the United States and that its customers include public utility companies, railroads, building and construction companies, mining companies, oil companies, manufacturing companies and agencies of federal, state and municipal governments.

The record shows that appellant is the prior user with respect to each of its marks.

The issue here is, as stated by the board, whether or not appellee's mark, "SUPER–FLEX," so resembles any or all of appellant's marks as to be likely to cause confusion or to cause mistake or to deceive.

The board in a brief opinion held that:

"It is apparent that the marks of the parties are similar only in that each embodies the term 'SUPER,' which possesses an inherent connotation of excellence or superior quality, and which, as further shown by the record herein, forms a component of marks registered by others for electrical wires, cables and or related goods. Giving due consideration to the nature of the term 'SUPER,' and considering the differences between applicant's mark and each of opposer's marks in their entireties, it is concluded that there is no reasonable likelihood of purchaser confusion, mistake or deception."

We find no evidence of record or reasonable inference to be deduced therefrom that appellant has or will be damaged by appellee's use of the mark

4. Reg. No. 525,910, issued June 6, 1950 for insulated electric cables and cords.

5. Reg. No. 352,147, issued Nov. 23, 1937 for bare and insulated electrical wires and cables, renewed.

6. Reg. No. 370,036, issued Aug. 15, 1939 for insulated electrical wires and cables, renewed.

7. Reg. No. 361,783, issued Nov. 1, 1938 for insulated electrical wires and cables, renewed.

8. Reg. No. 402,803, issued Aug. 10, 1943 for insulated electrical wires and cables.

9. Reg. No. 626,124, issued May 1, 1956 for jacketed electrical conductors.

10. Reg. No. 342,764, issued Jan. 26, 1937 for bare and insulated electrical wires and cables.

"SUPER–FLEX" for the specific goods to which it appertains. The extensive scope, variety and special applications of appellant's goods, the distinction in price and nature of the many goods sold by appellant negates any categorization of sameness in all of the goods of both parties by classifying them as "wire and cable."

Appellant's series of marks with their dissimilar suffixes are presumptively used by appellant to distinguish the marks from each other as well as the goods to which they apply.

A weighty consideration here is the specialized nature of the goods and the market for the goods for which appellee seeks to register its mark. The goods are ordered by those with technical knowledge or subject to technical advice. The goods require explicit specifications. They are adaptable to a limited and specific purpose with prices varying according to technical specifications and, to a large extent, to individual situations. Safety aspects must meet governmental inspection and approval. These circumstances would tend to lend assurance against mistake as to product or source. Potential purchasers in addition to being discriminating persons are limited in number to five or six hundred. It would not seem logical or realistic to conclude under these circumstances that these purchasers of appellee's goods identified under the "SUPER–FLEX" mark would be misled into the belief that they were buying the products of appellant. Especially would this be true where this line of goods has not been associated with a "SUPER" prefix employed by appellant.

We are not persuaded that the record supports appellant's contention relating to a showing of some "secondary meaning" of public reliance on appellant's marks or that the public by virtue of appellant's long usage of the term "SUPER" "naturally accepts" that term as the "dominant feature which identifies appellant's electric wire and cable products as a whole."

Appellant argues that it has established a family of marks using the prefix "SUPER" which would preclude the registration of the term "SUPER–FLEX" by appellee. To so conclude we would have to surmise that purchasers of any one of the many "wire and cable" products were aware of the remainder of the products and the respective marks associated therewith. As we have pointed out, the record fails to show not only that the term "SUPER" identifies appellant to purchasers in the specific field of elevator traveling and lighting cable but also is equally devoid of proof of a public awareness of the individual marks and their identity as to source as to constitute a family of marks. Motorola, Inc. v. Griffiths Electronics, Inc., 317 F.2d 397, 50 CCPA 1518, cited by appellant, is factually distinguishable from the case at bar. In Motorola the marks were extensively used, displayed and advertised together. Such is not the case here. There is no proof upon which to predicate a conclusion of public acceptance of the pattern for which appellant contends.

Numerous registrations of "SUPER" marks by others, as shown by the record, would seem to preclude the exclusivity of a family of such marks residing in appellant. Of particular significance is the registration of "SUPER CORONOL." [11]

We agree with the board that Libby-Owens-Ford Glass Co. v. General Aluminum Window Co., Inc., 275 F.2d 947, 47 CCPA 833, cited by appellant, is readily distinguishable from the instant case. The marks there not only contained identical prefixes ("THERMO") but also the court found that their terminal portions "PANE" and "LITE" had the same connotation to the general public. The court further found that both parties advertised extensively, directing same to the

11. Reg. No. 675,523 registered March 17, 1959 for electrical wires, cables, and conductors and electrical insulating and/or jacketing materials.

same class of purchasers and were interested in identifying their products in the mind of the general public by their respective trademarks. Such is not the case here.

Upon thorough consideration of the cases cited and the argument of counsel, we are not convinced of reversible error in the decision of the board that, viewing the marks under consideration in their entireties, there is no reasonable likelihood of purchaser confusion, mistake or deception. We therefore affirm the decision of the Board of Appeals.

Affirmed.

RICH, J., dissents.

SMITH, Judge (concurring).

The majority opinion supports its affirmance of the Trademark Trial and Appeal Board for a number of stated reasons. I am satisfied, in reaching the same result, to do so simply by a comparison of the marks in issue. This comparison indicates that the only common feature is the use of the prefix "Super." The record discloses many marks having the identical prefix and further reveals that it is not used alone as a trademark. These factors establish that the "Super" portion of the mark per se performs no trademark function. The suffixes of the marks in issue differ from each other and when combined with the common prefix "Super" become the marks which must be considered as the entities upon which the decision must be predicated. I see no necessity for going beyond the precise language of the Trademark Trial and Appeal Board:

"* * * Giving due consideration to the nature of the term 'SUPER', and considering the differences between applicant's mark and each of opposer's mark's [sic] in their entireties, it is concluded that there is no reasonable likelihood of purchaser confusion, mistake or deception."