**CBS INC., Appellant,**

v.

**George Clifford MORROW, Appellee.**

**Appeal No. 83–597.**

United States Court of Appeals, Federal Circuit.

June 6, 1983.

Arthur H. Seidel, Philadelphia, Pa., for appellant. Ronald L. Panitch, Roberta L. Jacobs and Jay K. Meadway, Philadelphia, Pa., were on the brief for appellant, of counsel.

Francis H. Lewis, Alameda, Cal., for appellee. With him on the brief was J. Thomas McCarthy, San Francisco, Cal., of counsel.

Before RICH, MILLER, and SMITH, Circuit Judges.

1. Opposition No. 62,227, filed March 1, 1979, by CBS Inc. The decision of the board dated September 30, 1982, is reported at 217 USPQ 272.

JACK R. MILLER, Circuit Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board ("board") of the Patent and Trademark Office dismissing appellant's opposition [1] to application serial No. 145,054 for registration of the mark "THINKER TOYS and Design," shown below, for "[a]pparatus for electronic computers and data processing systems." We reverse.

# Thinker Toys

## BACKGROUND

Applicant-appellee's business is currently limited to the design, manufacture, and sale of peripheral products for microcomputers and small computers and/or data processing systems. Applicant's products are sold through two main channels of trade: approximately 85% of his products are sold wholesale to microcomputer stores and systems houses; the remaining 15% are mail order sales, of which approximately one-third are made to individual consumers. Applicant's goods bearing the mark "THINKER TOYS" currently include "electronic components and circuit boards," but do not include "electronic terminals, keyboards, screens, printers, computers or programs or software for games or toys." Registration has been opposed by appellant on the ground of likelihood of confusion between applicant's mark, as applied to the goods described in its application, and opposer's mark based on opposer's prior use and registration (in 1914) of the mark "TINKERTOY" on the principal register for "games, toys, and children's building-blocks," [2] renewed for the third time for twenty years from April 7, 1974.

2. Registration No. 96,175.

The board found that the goods of the applicant are not so closely related to the goods of opposer that the purchasing public would identify them with a single source; also, that the channels of trade in which the respective goods move are different. The board further found that the commercial impression of applicant's mark differed significantly from that of the "TINKERTOY" mark, relying primarily on the presence of the light bulb in applicant's mark. Accordingly, the board, with one member dissenting, held that there was no likelihood of confusion from concurrent use of the respective marks.

## ANALYSIS

■ Where likelihood of confusion is asserted by an opposer with respect to a trademark for which an application for registration has been filed, the issue must be resolved on the basis of not only a comparison of the involved marks, but also on consideration of the goods named in the application and in opposer's registration and, in the absence of specific limitations in the application and registration, on consideration of the normal and usual channels of trade and methods of distribution. *Squirt-co v. Tomy Corp.,* 697 F.2d 1038, 1042–43, 216 USPQ 937, 940 (Fed.Cir.1983). The description of the goods in an application for registration is critical because any registration that issues will carry that description. Moreover, although a registrant's current business practices may be quite narrow, they may change at any time from, for example, industrial sales to individual consumer sales. *San Fernando Electric Manufacturing Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 685, 196 USPQ 1, 2 (CCPA 1977).

■ Applicant's goods are not limited to any particular channels of trade or methods of distribution, nor to any particular end products. They are identified so broadly that they could include electronic components and circuit boards for computer games or video games.[3] We are not persuaded that applicant would always refrain from offering circuit boards for computer games or video games through the same channels of trade employed by opposer for its "TINKERTOY" products.[4]

Applicant argues that confusion from use of the marks is not likely because its customers are by and large sophisticated, well-educated, technically oriented persons, in contrast to the generally juvenile buyers of the wooden stick toys that opposer manufactures. However, there is no restriction on the nature of the "games" identified in opposer's registration. Moreover, even within applicant's exhibit, "1978 Profile of Computer Store Customers," the percentage of personal computer purchasers who identified "games" as a reason for the purchase ranged from 43% to 73% among different occupational groups. We conclude that, in view of the popularity of computer and video games, applicant's electronic components and circuit boards, offered to the public under applicant's mark, would be likely to be perceived as source-related or somehow connected with opposer.

Applicant also argues that his mark and opposer's mark create different overall commercial impressions in the minds of purchasers, because the light bulb feature serves to emphasize the "THINKER" portion of the mark and to heighten the contrast with opposer's mark relating to relatively low-technology toys. However, minor design features do not necessarily obviate likelihood of confusion arising from consideration of the marks in their entireties. Moreover, in a composite mark comprising a design and words, the verbal portion of the

---

**3.** It is proper to construe applicant's description of its goods in the manner most favorable to opposer. *CTS Corp. v. Cronstoms Manufacturing, Inc.,* 515 F.2d 780, 185 USPQ 773 (CCPA 1975).

**4.** Applicant cites tremendous development costs and high unit sales prices in arguing that his goods could not be made competitive in the toy and game market. However, this amounts to an admission that such development is possible. Advances in technology often convert the prohibitive undertakings of today into the profitable ventures of tomorrow.

mark is the one most likely to indicate the origin of the goods to which it is affixed. *W.B. Roddenbery Co. v. Kalich,* 158 F.2d 289, 291, 34 CCPA 745, 72 USPQ 138, 139–40 (CCPA 1946); *Rice-Stix Dry Goods Co. v. Industrial Undergarment Corp.,* 152 F.2d 1011, 1012, 33 CCPA 813, 68 USPQ 186, 187 (CCPA 1946). This is particularly true when a mark appears in textual material, such as catalog descriptions,[5] in which it is often impossible or impractical to include the design feature of the mark.

 Applicant correctly states that the mere fact that a mark is a caricature or pun based on a registered mark is insufficient to sustain an opposition to registration, citing *Volkswagenwerk Aktiengesellschaft v. Rose'Vear Enterprises, Inc.,* 592 F.2d 1180, 201 USPQ 7 (CCPA 1979). However, we are not persuaded that this is a case where "the customer exercising reasonable care, caution, and perception would not be likely to equate the two [marks]." 592 F.2d at 1183, 201 USPQ at 9.

Applicant further argues that an agreement in 1970 between opposer's predecessor and a toy store in Carmel, California, allowing use by the store of the trade name "Thinker Toys" modified by an owl logo, with the words "Thinker" and "Toys" being placed on separate lines, is evidence that opposer's predecessor itself did not consider confusion likely between "TINKERTOYS" and "THINKER TOYS." However, there is no evidence that the California toy store ever desired or attempted to register the agreed-upon trade name. Registration upon the principal register, which applicant seeks here, gives the registrant a set of nationwide rights and statutory presumptions which differ in kind from those based on mere consent to concurrent use of a trade name in an isolated geographic location.

In view of the foregoing, we hold that applicant's trademark, as applied to applicant's goods, so resembles opposer's registered mark that it is likely to cause confusion and should, therefore, be refused registration. 15 U.S.C. § 1052(d).

The decision of the board is reversed.

REVERSED.

---

**5.** As pointed out earlier, approximately 15% of applicant's total sales are by mail order, and applicant's 17-page catalog (of record) displays the words "Thinker Toys" without the light bulb design some fifteen times.