Hearing:
May 18, 1988
T. Henderson
Paper No. 35

F 46

FOR PUBLIC~~~~~ ~~ ~~LL

## U. S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE

---

Trademark Trial and Appeal Board

---

Calvin Klein Industries, Inc.
v.
Calvins Pharmaceuticals, Inc.

---

Opposition No. 74,192 to application Serial No. 554,987
filed August 23, 1985.

---

Gottlieb, Rackman & Reisman, P.C. for Calvin Klein Industries,
Inc.

James W. Berenato, III, B. Edward Shlesinger, Jr., George A.
Arkwright, George A. Garvey and James E. Shlesinger for Calvins
Pharmaceuticals, Inc.

---

Before Simms, Krugman and Hanak, Members.

Opinion by Hanak, Member:

Applicant has applied to register the mark CALVINS in
block letters for "birth control devices, namely, condoms."[1]

Opposer Calvin Klein Industries, Inc. asserts that
registration to applicant should be refused because applicant's
use of the mark CALVINS for condoms is likely to cause
confusion, mistake and deception in view of opposer's prior
rights in the trademarks CALVIN KLEIN and CALVIN as used, inter

---

(1) Application Serial No. 554,987, filed August 23, 1985
claiming first use in October 1984 and first use in interstate
commerce in November 1984.

alia, for apparel and for men's body products. Section 2(d) of the Lanham Trademark Act (15 U.S.C. §1052d). Opposer further asserts that registration to applicant should be refused because applicant's mark CALVINS falsely suggests a connection with opposer. Section 2(a) of the Lanham Trademark Act (15 U.S.C. §1052a).

A hearing was held on May 18, 1988 at which counsel for both opposer and applicant were present.

Opposer is the owner of three registrations of CALVIN KLEIN in block letters: (1) Registration No. 1,086,041 which issued February 21, 1978 for various items of women's wearing apparel; (2) Registration No. 1,226,396 which issued February 8, 1983 for, inter alia, various items of men's wearing apparel as well as various toiletries including cologne, bath oil, skin conditioning cream, body powder, and soap for personal use; and (3) Registration No. 1,418,226 which issued November 25, 1986 for eyeglass frames and sunglasses. Obviously, opposer may and does base its opposition in part on the rights which it derives from the three registrations of CALVIN KLEIN. King Candy Co. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974). Moreover, the record demonstrates that opposer first made use of CALVIN KLEIN for the foregoing goods (with the exception of eyeglass frames and sunglasses) prior to applicant's first use of CALVINS on condoms in October 1984.

2

As for opposer's use of its unregistered trademark CALVIN, the record reveals that opposer has used this mark continuously since 1980 on junior sportswear products including jeans, skirts, blouses, dresses and sweaters. Moreover, opposer, through a licensee, has continuously used the mark CALVIN in connection with men's body products since 1981. These men's body products include cologne, after shave, deodorant, shampoo, moisturizing bronzer, bath bar and body wash.

In short, it is clear that opposer first used the mark CALVIN on junior sportswear and men's body products prior to applicant's first use of CALVINS on condoms in October 1984. Thus, priority of use is not an issue in this proceeding.

In addition, the record demonstrates that opposer's use of its mark CALVIN KLEIN has been extensive. For example, in the six year period from 1981 through 1986, the total sales volume at wholesale of all merchandise bearing the CALVIN KLEIN trademark was in excess of one-and-a-half billion dollars. The testimony of one of applicant's employees establishes that as a general rule, the retail dollar volume of applicant's CALVIN KLEIN merchandise would be approximately twice that of the wholesale dollar volume.[2]

---

(2) Applicant, has objected to opposer's sales volume evidence characterizing it as "nothing but rank hearway [sic], at best." Applicant's objections are not well founded for the reasons articulated in Squirtco v. Tomy Corp., 697 F.2d 1038, 1042 n.4, 216 USPQ 937, 939 n.4 (Fed. Cir. 1983).

Moreover, opposer's sales of its various items of CALVIN junior sportswear have also been extensive. In the years from 1980 through 1986, the sales volume at wholesale has been approximately $240 million, and at retail approximately $480 million.

Sales of opposer's CALVIN men's body products in the period from 1981 through 1986 exceeded $30 million at wholesale, and $60 million at retail.

In addition to the rights that opposer has built up in the mark CALVIN through sales of its CALVIN junior sportswear and CALVIN men's body products, the record also establishes that a significant portion of the public and trade has come to refer to at least certain of opposer's CALVIN KLEIN products as simply CALVINS. For example, prior to applicant's first use of CALVINS in October 1984, the September 5, 1983 issue of _Time_ magazine contained a story entitled "Calvin's New Gender Benders," which reads, in part, as follows: "Remember Brooke Shields' line three years ago, 'Do you want to know what comes between me and my Calvins? Nothing.' By November, when his line of undies hits the stores, the answer will be: One more pair of Calvins."

Given the fact that priority is not an issue in this proceeding, this Board must determine whether there is a likelihood of confusion, mistake and deception vis-a-vis the marks and goods of the parties.

4

Considering the marks first, this Board is of the view that applicant's mark CALVINS is virtually identical to the mark CALVIN which opposer has previously used in connection with junior sportswear and men's body products. The addition of the "S" at the end of applicant's mark does little to distinguish it from opposer's mark CALVIN. As for opposer's mark CALVIN KLEIN as compared to applicant's mark CALVINS, this Board need not--and hence does not--determine the similarity of these two marks given the fact that it has been established that many members of the trade and public refer to certain of opposer's CALVIN KLEIN products as simply CALVINS, a mark identical to applicant's mark.[3]

Hence, because applicant's mark CALVINS is virtually identical to opposer's mark CALVIN for junior sportswear and men's body products, and because applicant's mark is identical to the abbreviated form of opposer's mark CALVIN KLEIN (i.e. CALVINS) as used by many members of the trade and public, it is apparent that if confusion, mistake and deception are not to be found, it must be on the basis that applicant's products are essentially dissimilar from opposer's products.

---

(3) While the record does not establish that opposer has made any trademark use of CALVINS, it is appropriate to take cognizance of the fact that the public and trade abbreviate opposer's full mark CALVIN KLEIN to simply CALVINS. See Polo Fashions, Inc. v. La Loren, Inc., 224 USPQ 509, 511 (TTAB 1984).

While some dissimilarities exist between opposer's apparel products and applicant's condoms,[4] both opposer and applicant use virtually the identical mark (i.e. CALVIN and CALVINS respectively) on clearly related products, namely, men's body products and condoms. We are of the view that most purchasers would consider CALVIN cologne, CALVIN after shave, CALVIN deodorant, CALVIN shampoo, CALVIN bronzer, CALVIN bath bar, CALVIN body wash and CALVINS condoms as emanating from a single source, or at the very least, would believe that the products have a common sponsor or endorser. In our opinion, this would be true even if the various CALVIN and CALVINS products were sold at different stores.[5] Thus, this Board

---

[4] There is precedent for finding likelihood of confusion when similar marks are used on men's wearing apparel on the one hand and men's toiletries on the other. See Faberge, Inc. v. Madison Shirt Corp., 192 USPQ 223 (TTAB 1976) (BRUTUS for men's wearing apparel held confusingly similar to BRUT for men's toiletries).

[5] Applicant argues that the channels of trade for opposer's CALVIN men's body products and applicant's CALVINS condoms are different because of a purported "agreement" entered into by opposer and a third party, Calvin Clothing Corporation. There are three flaws in applicant's argument. First, while in its correspondence with Calvin Clothing Corporation, opposer has indicated how it intends to market CALVIN men's body products, the record before us does not support applicant's allegation that opposer has been contractually bound to its intentions. Second, even assuming for the sake of argument that opposer was contractually bound vis-a-vis Calvin Clothing Corporation, applicant is obviously not a party to this "contract" and therefore could not limit opposer's channels of trade for opposer's CALVIN men's body products. Third, in any event, applicant's application contains no restrictions as to applicant's channels of trade, and thus, applicant is free to market its CALVINS condoms in the very types of stores to which opposer is purportedly "bound" to restrict its sale of CALVIN men's body products.

6

finds that there is a likelihood of confusion, mistake and deception as a result of the concurrent use by applicant of CALVINS for condoms and by opposer of CALVIN for various men's body products.[6]

Having found that a likelihood of confusion, mistake and deception does exist as proscribed by Section 2(d) of the Lanham Trademark Act, this Board will now consider applicant's claim based upon the Section 2(a) of the Act. It is opposer's contention that "the term CALVINS points uniquely to opposer, and applicant's use of the CALVINS term falsely suggests a connection with opposer." (Opposer's brief p. 39). We are of the view that the record simply does not demonstrate that CALVIN "is a name solely associated with [opposer]." The University of Notre Dame v. J.C. Food Imports, 703 F.2d 1372, 217 USPQ 505, 509 (Fed. Cir. 1983). The record clearly establishes that a third party--Calvin Clothing Corporation--has made use of CALVIN, a term virtually identical to CALVINS.

---

(6) Applicant contends that because opposer has acquiesced in the use of CALVIN by Calvin Clothing Corporation for boys' and men's apparel and has purportedly agreed with Calvin Clothing Corporation that it (opposer) will not apply to register CALVIN with the U.S. Patent and Trademark Office, that therefore opposer cannot now seek to restrict applicant's use and registration of CALVINS for condoms. This Board is unpersuaded by applicant's reasoning. Whatever restrictions may or may not exist regarding opposer's use and registration of CALVIN vis-a-vis Calvin Clothing Corporation do not inure to the benefit of applicant. Opposer's rights in the mark CALVIN are superior to applicant's rights in the mark CALVINS for condoms. Plus Products v. General Mills, Inc., 188 USPQ 520, 522 (TTAB 1975). Cf. CBS, Inc. v. Morrow, 708 F.2d 1579, 218 USPQ 198, 200 (Fed. Cir. 1983). See also 2 J. McCarthy, Trademarks and Unfair Competition, §31:39 at pages 674-675 (2d ed. 1984).

7

Indeed, the use of CALVIN on apparel by Calvin Clothing Corporation predates any use of CALVIN or CALVIN KLEIN by opposer. Opposer had the burden of establishing that CALVINS points uniquely to opposer. While opposer has submitted a number of magazine and newspaper articles in which CALVINS and CALVIN are used to refer to opposer, these articles by themselves do not establish that either term is associated solely with opposer.

Decision: The opposition is sustained and registration to applicant is refused pursuant to Section 2(d) of the Lanham Trademark Act.

R. L. Simms

G. D. Krugman

E. W. Hanak
Members, Trademark
Trial and Appeal Board

JUL 2 1 1988

8