The **FLINTKOTE COMPANY**

v.

**Jack B. TIZER and William Tizer, Trading under the Names of Royal Carpet & Linoleum Company, Royal Tile Company, Royal Paint Stores, Cut-Rate Tile Company and Royal Venetian Blind Co.**

**Civ. A. No. 18610.**

United States District Court
E. D. Pennsylvania.
Sept. 5, 1957.

Robert F. Conrad, F. M. deRosa, Watson, Cole, Grindle & Watson, Washington, D. C., for plaintiff.

M. Carton Dittmann, Jr., Ballard, Spahr, Andrews & Ingersoll, Edward J. Willey, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

This is an action for trademark infringement and for unfair competition.

The plaintiff is the owner of two trademarks which it uses on floor tiles—"Tile-Tex", on asphalt tiles, and "Flexachrome", on vinyl asbestos tiles. Both of the trademarks are registered.

The defendants sell floor tiles under two registered trademarks of their own —"Tile-Tone" (asphalt) and "Flextone" (vinyl asbestos).

The plaintiff concedes that the defendants are not selling in competition with it, but they are selling the same product in the same general field of business, and the absence of competition has no effect upon the issue of trademark infringement, as distinguished from that of unfair competition.

The Trademark Act of 1946 defines trademark infringement as using any "colorable imitation of any registered mark in connection with the sale * * * of any goods * * * on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods." 15 U.S.C.A. § 1114. Thus, the sole question is whether the marks are so similar that there is a reasonable likelihood that the public will be deceived or confused as to the origin of the goods. This is a question of fact in each case, and all that the Court can do is to apply the broadly stated rule of the statute to the individual case before it. Not much help can be gained from decisions in other cases in which the similarity between other marks has been considered.

As to the alleged infringement of Tile-Tex by Tile-Tone, we start with the fact that the word "tile" is wholly descriptive, could not by itself qualify as a trademark, and can be freely used by anyone. When it is used as one part of a trademark, the combination may be registerable, but when it comes to the question of infringement, while the entire mark must be considered as a whole, the descriptive word cannot constitute the dominant part of it. Whatever confusion may be caused by the fact that the same descriptive word appears in the two marks must be discounted. Conversely, infringement cannot be found if the non-descriptive parts of the two marks are distinctive enough to prevent confusion.

The opinion in Eastern Wine Corporation v. Winslow-Warren, Ltd., 137 F.2d 955, 959, in which the Court held that "Chateau Montay" did not infringe "Chateau Martin", states the case: "Here the plaintiff chose to build its business around the use of a name 'Chateau' which was previously in common use in advertising wines. It took the risk that competitors, old and new, would also use that common name. To be sure, plaintiff added the word 'Martin,' and, so far as that word contributed a distinctive feature, plaintiff is undoubtedly entitled to a monopoly. But the distinctive monopoly, thus staked off by plaintiff, is not boundless. Already in use before plaintiff commenced business were 'Chateau Mouton,' 'Chateau Margaux,' 'Chateau Mirat.' Plaintiff, therefore, could not and did not pre-empt every use of 'Chateau' when coupled with every other name beginning with the thirteenth letter of the alphabet, nor even with one so beginning and consisting of six letters."

Turning to the distinguishing part of the marks in this case, I am unable to see any possibility of confusion arising between the syllables "tex" and "tone". Certainly one selling tiles trademarked, simply, "Tex" could not hope to enjoin a competitor from selling tiles trademarked "Tone" and, as has been seen, the monopoly of a trademark con- sisting of a descriptive word coupled with a non-descriptive one is held to a compass not much broader than that of the non-descriptive word or syllable by itself. It would take a great deal more, and much less equivocal, testimony of actual instances of confusion than that produced in this case to convince me that my impression is wrong and that there is confusing similarity.

The same can be said of the alleged infringement of Flexachrome by Flextone. "Flex" is a prefix in very common use in connection with the sale of many kinds of articles in the building trade. It carries the definite connotation of something which is not brittle but which will yield to pressure without breaking. Perhaps it is not strictly descriptive, but it is at least suggestive of a quality which buyers would find desirable in floor tiles, and I believe it is more nearly descriptive of tiles than "Chateau" is of wine. But, even if one does not discount the effect of the syllable "flex" in contributing to confusion, there is only a remote similarity between the three-syllable Flexachrome and the two-syllable Flextone—not sufficient, in my judgment, to give rise to confusion in the mind of the ordinary buyer. The plaintiff's testimony of confusion as to this mark was limited to a single instance.

As to the plaintiff's efforts to establish what counsel refers to as "sharp-shooting" on the part of the defendants, it is to be remembered that the ultimate test is an objective one and that the conduct and motives of an alleged infringer are material only so far as they may be evidence of a hope on his part that his mark will confuse the public—a sort of implied admission by him that it will. In the present case as against the evidence offered on the point must be weighed the fact that there is not the slightest similarity between the appearance of the defendants' packaging and dress and that of the plaintiff's. The manner in which the mark was chosen is also to be considered. Having been forced to give up one trademark, as con-

702

fusing, the defendants employed counsel who made an exhaustive search of the Patent Office Register covering practically every mark in the building material field that bore any similarity to either of the plaintiff's marks. He reported to the defendants two marks ("Tile-Stone" and "Flexstone") which had been registered long before the plaintiff's, and the registrations on which had expired, and advised the defendants that the marks now in suit were available and did not conflict with any of the large list of registered marks which he had examined and which included the plaintiff's. The plaintiff's argument fails to convince me that the defendants deliberately adopted their trademarks intending them to be confusingly similar to the plaintiff's.

As to the evidence of instances of actual confusion. There is no proof that any customer was ever confused, the evidence consisting of the testimony of an investigator, offered to show confusion on the part of clerks and salesmen. This is probably the easiest kind of evidence to get, since salesmen are always ready to sell a buyer something "just as good" if what he wants is not in stock—which he is entitled to do—but it is also one of the most unsatisfactory kinds because it is susceptible of such varying inferences. In the present case, that salesmen were confused is one of a number of permissible inferences, but it is a more reasonable one that the salesmen knew that the customer wanted a floor tile and, if offered something other than that which he asked for, probably would not make an issue of the difference in the name. Inasmuch as the burden is on the plaintiff, the latter, I think, is the most that can be claimed for the evidence. It is possible that in my opinion in House of Westmore, Inc., v. Denney (affirmed at 3 Cir., 151 F.2d 261) I gave this type of evidence more weight than it was entitled to, although it was stronger than that offered in the present case and there was more of it. However, the evidence in the House of Westmore case was merely corroborative of the conclusion reached by me, based on inspection and comparison of the marks, that the marks were likely to cause confusion. Here, my conclusion from inspection and comparison is that the marks are not confusingly similar, and the evidence offered to prove actual cases of confusion is not sufficient to overcome that view.

The defendants produced evidence of the registration in the Patent Office of many similar marks, all in the building material field. I think that the plaintiff in its argument misconceives the purpose for which this evidence was received. Of course, Patent rules are not applicable to trademark applications, and in the latter, the fact that a prior mark of the same kind has been registered does not invalidate a subsequent mark nor does it cut down the scope of the mark, which it has acquired or may acquire by use upon the goods in question. What the registrations put in evidence by the defendants do show is that it is the expert opinion of the Patent Office that the plaintiff's marks are not confusingly similar to a large number of other marks registered both before and after the plaintiff's, many of which are quite as close to the plaintiff's as are the defendants'.

I find that the defendants' trademarks do not infringe the plaintiff's.

As to the issue of unfair competition, the plaintiff's case is based wholly upon its contention that the defendants' trademarks are confusingly similar to those which it is using and the case stands or falls upon that proposition. Having found that the marks are not likely to confuse the public and that there was no attempt or intention to mislead by the dress, packaging or appearance of the defendants' goods, and there being no evidence of any other form of palming off, I conclude that the charge of unfair competition must be dismissed.

Judgment for the defendants on both counts.