PERMA-STONE COMPANY (a partnership comprising Edward J. Miller and Paul E. Linberg)

v.

PERMA-ROCK PRODUCTS, Inc. (a corporation).

Civ. No. 9259.

United States District Court
D. Maryland,
Civil Division.

April 7, 1958.

**617**

John D. Alexander, Baltimore, Md., and Ira Milton Jones, Milwaukee, Wis., for plaintiff.

Nathan Hamburger and Melvin J. Sykes, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is an action for infringement of a registered trademark. Plaintiff is a partnership located in Columbus, Ohio, where its members reside. Defendant is a Maryland corporation having its office and plant in Baltimore.

Plaintiff grants franchises to dealers to apply *Perma-Stone* simulated stone facing to exterior and interior wall surfaces of residential and commercial buildings, rents specialized molds to its franchised dealers, and sells them cementitious aggregates, color compounds and other related materials, to be used in the dealers' own operations. Plaintiff has more than 200 franchised dealers throughout the United States and in seven foreign countries, all of whom are engaged in the building construction industry as general contractors, block dealers, home remodeling companies, and the like. The dealers advertise and solicit jobs for *Perma-Stone* facing from property owners in their respective areas and make

their own contracts with such property owners.

The facing and the service of applying it are both sold under the mark *Perma-Stone*. Many, but not all, of the materials which a dealer uses in mixing and applying *Perma-Stone* facing must be purchased from plaintiff before the dealer may describe the facing as *Perma-Stone*. Such materials bear plaintiff's *Perma-Stone* trademark. Plaintiff's district representatives call on its franchised dealers every ninety days, to require adherence to plaintiff's specifications and standards and to maintain liaison between plaintiff and its dealers.

It is possible to use *Perma-Stone* color compound as a plaster without any mix at all except water, but this is quite expensive; it is seldom done, and only as a "special purpose operation". The color compound can also be mixed directly into certain plasters for the purpose of giving a special color or finish, but in practice it is used almost exclusively for making *Perma-Stone* simulated stone facing, which is applied on existing wall surfaces. *Perma-Stone Diatex* is used with Portland cement and an aggregate, usually sand, in the base or preparatory coats of *Perma-Stone* facing before the simulated stone finish is applied, in order to make the mortar more plastic and waterproof. Very occasionally, it is used in ordinary concrete.

*Perma-Stone* dealers do not sell any *Perma-Stone* materials, as such, to anyone. They use these materials only in connection with their construction and remodeling jobs.

Edward J. Miller, operating as a sole trader, first used *Perma-Stone* as a trademark in 1929; it has been used continuously since, by him and by the plaintiff partnership. Plaintiff has obtained three registrations in the United States Patent Office for *Perma-Stone*: (1) covering "Molds for Use in Building Construction"[1]; (2) covering "Cementitious Surfacing Distinguishable in Ap-

1. No. 281,621, registered March 24, 1931, republished under the Act of 1946, 15 U.S.C.A. § 1051 et seq., on August 23, 1949, and renewed March 24, 1951.

pearance from Nailed-on Products Such as Shingles; Artificial Stone Made from Cementitious Material; and Coloring Admixtures and Other Ingredients in Powdered Form for Incorporation in Concrete, Plaster, and Cement Mortars for the Purpose of Giving Desired Color and Texture to Such Materials"[2]; and (3) as a Service Mark, covering "Casting of Stone-Like Facings of a Cementitious Material Such as Concrete or Plaster to Which Coloring and Other Ingredients in Powdered Form Have Been Added, Directly Upon Building Walls and Other Surfaces by Means of Molds, Shaped to Simulate Natural Stone"[3].

From the beginning *Perma-Stone* facing was advertised on a national basis. Plaintiff spends $100,000 a year, and its dealers an estimated $1,000,000 a year advertising *Perma-Stone* facing in newspapers, magazines, radio, television, direct mail, trade and industry shows, and other media. All of plaintiff's advertising to the public describes *Perma-Stone* as, and associates the name with, "the original molded stone wall facing", "a permanent stone-like facing cast directly on walls", "originator of molded stone wall facing", and the like.

Defendant, Perma-Rock Products, Inc., produces and sells perlite aggregates. *Perlite* is a volcanic ore, which is mined, crushed and dried into dust. It is then manufactured or expanded at very high temperatures to many times its natural volume. Expanded perlite is used as a lightweight aggregate to produce a lighter, more easily worked, plaster or concrete, both of which lighten structural loads, are fire retardant, and have desirable insulating qualities. Expanded perlite is also used in plaster finishes, and as a soil conditioner and a filter medium.

Defendant is owned and operated by Jack O. Chertkof, a consulting engineer. Chertkof had a family corporation known as Perma Products Company, which was incorporated in 1948 to manufacture laminated plastics. In July, 1951, he formed Perlite Products, Inc., and obtained a franchise from Great Lakes Carbon Company, which markets expanded perlite under the registered trademark *Permalite*. Chertkof organized the defendant corporation, Perma-Rock Products, Inc., in November, 1951, because the trademark *Permalite* covered only plaster aggregate and concrete aggregate, whereas Chertkof desired his own distinctive trademark to cover his entire range of products, including his soil conditioner and his filter aid. Chertkof did not select *Perma-Rock* because he desired to take advantage of the advertising or reputation of *Perma-Stone*. He wanted a name like *Permalite*, which he then had a right to use.

Defendant manufactured and sold *Perma-Rock Permalite* until the expiration of its Great Lakes franchise in 1954. During that period, both defendant and Great Lakes spent substantial sums in the Maryland area promoting defendant's *Perma-Rock Permalite* pursuant to a standard promotion agreement. *Perma-Rock* perlite has been marketed in Maryland continuously since 1954.

Great Lakes thereafter brought suit against defendant claiming that the use of *Perma-Rock* was an infringement of its *Permalite* mark. Under the terms of a consent decree in that case, defendant has continued its use of *Perma-Rock*, and Great Lakes has withdrawn its opposition to the registration of that trademark by defendant.

Defendant has no franchises, and its expansion is now limited by the terms of the decree in the Great Lakes litigation. Because of the bulkiness of its products, defendant is limited by transportation costs to a market area within a radius of 200 miles of its plant. Defendant has promoted and advertised its product within that area, at a cost of $70,000.

Defendant does not sell to the general public. More than 99% of its concrete aggregate is sold to ready-mix concrete yards, which do not resell the aggregate,

2. No. 439,000, registered June 1, 1949.

3. No. 587,412, Service Mark, registered March 23, 1954.

but use it in lightweight ready-mixed insulating structural concrete, which the yards sell under any name they choose. The plaster aggregate is sold to building supply houses, which resell it to plasterers, contractors, and other persons in the building trades. About three or four percent of defendant's business is in *Mono-finish*, a plaster finish suitable for use over base coats in which perlite has been mixed. The *Perma-Rock* soil conditioner, *Vent-A-Soil*, and *Perma-Rock Filter Aid* are generally sold to florists and filtration plants. Very small proportions of defendant's products are sold to members of the general public who like to "do it yourself".

The packaging of plaintiff's products and defendant's products are entirely dissimilar. Defendant does not attempt to imitate plaintiff's lettering.

Plaintiff has nearly forty franchised dealers within defendant's marketing area. None of them has ever complained that *Perma-Rock* adversely affects the *Perma-Stone* mark. Edward J. Miller, senior partner of plaintiff, first heard of *Perma-Rock* when he was notified by his trademark counsel that defendant had filed an application for trademark registration. He knew of no instance of actual confusion, and Chertkof, called as an adverse witness by plaintiff, testified that he knew of no such confusion.

Plaintiff filed notice of opposition to the registration of *Perma-Rock* by defendant, and both parties took testimony. The Examiner of Interferences sustained the opposition and denied registration. Defendant appealed from that decision, and the Assistant Commissioner affirmed the decision of the Examiner. Defendant appealed to the Court of Customs and Patent Appeals. While that appeal was pending, plaintiff filed the instant action. Defendant then filed a motion in the Court of Customs and Patent Appeals asking that the proceedings therein be stayed pending the outcome of this action. That motion was denied. Thereupon defendant dismissed its appeal to the Court of Customs and Patent Appeals, and the Assistant Commissioner entered an order suspending further action in the Patent Office on defendant's application for registration pending termination of this suit. The Assistant Commissioner noted that defendant has requested this court to direct the Patent Office to register its mark as a part of the relief sought herein.

The decision of the Patent Office, though not binding on this court, is entitled to respectful consideration. However, a comparison of the record in the Patent Office proceedings with the record in the case at bar shows that the relevant facts have been more fully developed in this court. While it is true that the products of both parties are used by plasterers and cement finishers in connection with building construction or remodeling, and can be used in conjunction with each other, as found by the Examiner, in practice they are not used in conjunction with each other.

Plaintiff leases molds and sells materials directly and solely to its own franchised dealers, who are required to buy these materials from plaintiff if they call their facing *Perma-Stone*. The general public knows *Perma-Stone* as a simulated stone facing, and is not interested in the source of the materials which the dealers use in constructing it. The dealers are forbidden to resell the materials which they buy from plaintiff; they use such materials only in their own operations, and almost entirely in the construction of *Perma-Stone* simulated stone facing. Plaintiff supervises its dealers, closely, and they know that *Perma-Stone* products can be purchased only from plaintiff. There is no danger that the dealers will be confused or will mistakenly believe that *Perma-Rock* products are manufactured or sponsored by plaintiff.

At least 90% of defendant's *Perma-Rock* products are sold to concrete yards, plasterers, contractors and other persons in the building trades. The concrete aggregate and the plaster aggregate, defendant's principal items, are not sold to the public in any substantial amount. The soil conditioner and the filter medium are sold to the public, but.

they are minor items, outside the building construction field.

Scores of other *"Perma"* combinations, including *Permalite, Perma-surface, Perma-Mix* and *Permacrete* in the building supply field, have been registered and used. Many trademarks contain the suffixes "Stone" and "Rock".

The purchasers of the products of both plaintiff and defendant are a specialized class of considerable sophistication and experience. They know the characteristics and the source of the materials they buy and are conditioned against assuming identity of origin by the profusion of "Permas", "Stones", and "Rocks" in the field.[4] They are not likely to believe that all of the "Permas" have a common origin, or that plaintiff is sponsoring defendant's product. Arrow Distilleries, Inc. v. Globe Brewing Co., 4 Cir., 117 F.2d 347; Flintkote Co. v. Tizer, D.C.E.D.Pa., 158 F.Supp. 699; B. A. Railton Co. v. Schell Ranch and Packing Co., 102 U.S.P.Q. 401; Developments in the Law, Trademarks and Unfair Competition, 68 Harv.L.Rev. 814, 836–837.

■ Sec. 32 of the Lanham Act, 15 U.S.C.A. § 1114, defines trademark infringement as the use, without the consent of the registrant, of any "reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services". The decision in each case must turn on the facts, and I find as a fact that there is little or no likelihood of confusion by purchasers of the products of the respective parties, or by the public generally.

It is significant that there is no evidence of actual confusion, despite the fact that defendant has sold large quantities of its products for more than five years under the mark *Perma-Rock* in an area in which *Perma-Stone* has been extensively advertised and widely distributed See Flintkote v. Tizer Co., D.C.E.D.Pa., 158 F.Supp. 699

■ No doubt *Perma-Stone* has acquired a secondary meaning as indicating plaintiff's facing. But it is a weak mark. *Perma-Stone* is not a coined or fanciful word, such as *Kodak,* nor a word which is arbitrary as applied to the product, such as *Blue-goose* potatoes. Like the marks of plaintiff's competitors *Dura-Stone* and *Everlastone, Perma-Stone* is intended to suggest that the product has certain qualities. Suggestive marks are entitled to less protection than coined, arbitrary or fanciful marks; they are narrowly restricted to the particular kinds of goods on which they are used. The use of the mark *Sunbeam,*

4. In Lone Star Cement Corp. v. Concrete Products Corp., 102 U.S.P.Q. 309 (Commr. of Patents), the Commissioner permitted the registration of "Texcon" for molded concrete structural improvements and slabs over the opposition of the owner of "Texcor" for Portland cement. The Commissioner said:

"It is generally known that precast structural members of molded concrete are sold to and used by building contractors, architects and building engineers. It is also generally known that building contractors, architects and building engineers frequently used Portland cement. They are not in my opinion 'ordinary purchasers making their purchases in the ordinary course of trade', as the term is usually employed. They are more likely to discriminate between producers of such products as are involved here.

"If the marks are identical, the doubt as to likelihood of confusion might be sufficient to resolve it in opposer's favor and sustain the opposition. The marks are not the same, however, and when we consider the type and class of purchasers, and the care with which they purchase such items as applicant's precast structural concrete members, where curing, densification, dispersion, reinforcements and tolerances are highly important, I do not believe that confusion, mistake or deception of purchasers is likely to occur."

See also Endo Products, Inc., v. National Package Drugs, Inc., 100 U.S.P.Q. 250, Cf. William S. Merrell Co. v. Anacin Co., 109 F.2d 339, 27 C.C.P.A.,Patents, 847.

well known on electrical appliances, is barred on lamps, but not on furniture, Sunbeam Furniture Corp v. Sunbeam Corp., 9 Cir., 191 F.2d 141. *Sunkist*, on fruits and vegetables, is not infringed by its use on bread, California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971.

I conclude: (1) Defendant's mark is not a "reproduction, counterfeit, copy, or colorable imitation of" plaintiff's mark. (2) Its use in connection with the sale of defendant's goods is not "likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods". (3) Plaintiff is not entitled to prevent the registration of defendant's mark.

Let judgment be entered for defendant, with costs.