The DUROX COMPANY

v.

DURON PAINT MANUFACTURING
COMPANY, Inc.

Civ. No. 12326.

United States District Court
D. Maryland.

June 19, 1962.

See also 193 F.Supp. 829.

Bruce B. Krost, Cleveland, Ohio, and Robert R. Bair, Baltimore, Md., for plaintiff.

Francis C. Browne, Washington, D. C., and Richard W. Case, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff's complaint under 15 U.S.C.A. § 1071 and 35 U.S.C.A. § 146 asks this court to reverse a decision of the Patent Office Trademark Trial and Appeal Board [1] and to direct the Commissioner of Patents to issue to plaintiff its requested registration of DUROX for a "liquid primer-sealer surface coating which may also be used as an additive for paints, enamels and lacquers". Use since August 12, 1955, is asserted.

Defendant opposes the registration, as it did successfully before the Board, on the ground that plaintiff's mark DUROX so nearly resembles defendant's mark DURON as to be likely to cause confusion. Defendant has also filed a counterclaim for an injunction restraining plaintiff's use of the mark DUROX, and for other relief.

Plaintiff is a distributor of specialty automotive products, which it sells nationally through automotive specialty jobbers, principally to auto body shops, which repair and refinish motor vehicles. Its line comprises over a dozen items, most of which are sold under the trademark DUROX.[2]

Plaintiff frequently uses as a mark the word DUROX in white block letters inside a colored quadrilateral, thus:

Defendant manufactures a line of paint and paint products, including various additives, which are sold to the general public principally through paint stores and the paint departments of general stores. Defendant's products are sold along the Eastern Seaboard from Massachusetts to South Carolina. They are not sold west of the Appalachians.

Defendant registered the mark

for "ready-mixed paints, varnishes, wood stains, rubber base paint and paint enamels", in Class 16, Protective and Decorative Coatings, on November 3, 1953, Reg. No. 794. Because DURO and many other words beginning with DUR had already been registered in Class 16, defendant was not granted a registration of its mark until it placed wavy lines around the word DURON. Defendant now generally prints that word in white inside a colored figure similar to the figure shown on its registration, with

1. Duron Paint Mfg. Co. v. Durox Co., 125 U.S.P.Q. 534.

2. Durox items: Durox S-88, an additive for enamel to improve bond, gloss, flow and drying time; Durox L-98, an additive for converting lacquer to semienamel; Durox B-29, a baking enamel; Durox Bond Coat, for galvanize and aluminum; Durox Rustinol, rust preventer; Durox Paint Remover; Durox E-77 (no description in evidence); Durox Spray Tarp, protective coating for automobiles during shipping, particularly overseas; Durox Spray Tin, for cleaning and fluxing of tins; Durox Plastic Body Fill, semi-flex black plastic with cream hardener; Durox Black Devil, black, flexible plastic with cream hardener; Durox DX3 Cleaner, a car reconditioner; Durox Spray Wall, a rubber impregnator coating specially designed to spray white walls on black tires, sold with a tool adjustable to any white wall width desired; Durox Fiberglass Repair Kit. Plaintiff manufactures a few of the items which it distributes, but most of them are manufactured by others.

the small parallelogram at the bottom omitted.

Few of the products sold by plaintiff are similar to any products sold by defendant. The only two which have any considerable sale are DUROX S–88, an additive for enamel to improve bond, gloss, flow and drying time, and DUROX L–98, an additive for converting lacquer to semi-enamel. It is primarily for these two products that plaintiff seeks the proposed registration. Although these two additives could be mixed with paints used for various purposes, they are not advertised or sold except to the automotive specialty trade. In that field they have a national distribution.

Very few dealers sell both (1) automotive paints and (2) house paints and other paints for use by the general public. The evidence disclosed only two related companies in Norfolk and Richmond. Companies such as DuPont, Sherwin-Williams, Pittsburgh Plate Glass and Glidden, which manufacture both automotive and general paints, usually sell the two lines through different channels, often with different trade names. Auto body shops ordinarily purchase paint, as well as other products, from automotive supply houses. The proprietors of such shops are knowledgeable buyers; they are not likely to believe that all of the paints or other products sold under marks beginning with DUR or DURO have a common origin, or that either party to this case is sponsoring the other's product.

Plaintiff's chief officer visits hundreds of body shops each year to demonstrate how its products can best be used and to suggest how any failures can be corrected. It is possible, of course, that a few body shops have purchased some of defendant's paint, but they are more likely to have done so to paint their shops than to paint a motor vehicle.

No instance of actual confusion of source or any other confusion between plaintiff's and defendant's products has been proved or claimed.

The applicable law has been so frequently stated by this court that it need not be repeated here. See e. g. Huntington National Mattress Co. v. Celanese Corp. of America, D.Md., 201 F.Supp. 938; Perma-Stone Co. v. Perma Rock Products, Inc., D.Md., 160 F.Supp. 616; Sears, Roebuck & Co. v. Allstates Trailer Rental, Inc., D.Md., 188 F.Supp. 170; and cases cited in those opinions.

The burden of proof is on plaintiff to show by clear and convincing evidence that the decision of the Board was erroneous and that plaintiff is entitled to its requested registration. A somewhat different burden rests on defendant with respect to its counterclaim. Defendant has no right to prevent plaintiff from using the trademark DUROX unless such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of the goods in connection with which such mark is used. 15 U.S.C.A. § 1114; Restatement, Torts, secs. 716, 717, 728, 729, 730, 731.

In its disposition of plaintiff's application the Board said: "The goods of the parties are both paint products which would normally move through the same trade channels to the same class of purchasers, and are of such nature that they might be supposed to emanate from the same producer if sold under the same or similar marks." 125 U.S.P.Q. at 535.

The evidence in this court is fuller than the evidence which was offered to and admitted by the Board. It includes evidence of other marks beginning with DUR which was not considered by the Board because not filed as required by one of its rules. The evidence in this court, outlined above, shows that the goods of the respective parties do not normally move through the same trade channels; that they are not generally sold to the same class of purchasers; and that the purchasers of plaintiff's products are not likely to believe that they emanate from defendant. There is little or no likelihood of confusion so long

as plaintiff's and defendant's products are distributed through different channels, as they are at present. There might be some confusion if plaintiff's additives as presently labeled were offered for sale from the shelves of paint stores or general stores.

Both DUROX and DURON are weak marks. The first syllable of each is suggestive and has been used as the first syllable of hundreds of marks, many of them in Class 16, Protective and Decorative Coatings. Some of those marks are still in use.

■ Plaintiff has not met the burden resting on it to show that it is entitled to the registration of DUROX for a "liquid primer-sealer surface coating which may also be used as an additive for paints, enamels and lacquers".

On the other hand there appears to be no reason why it should not be entitled to the more limited registration of DUROX requested at the end of the case, namely, for a "liquid chemical composition for use as an additive for automotive paints, enamels, and lacquers", with the understanding that such registration would not be used in any attempt to prevent defendant from selling under its mark DURON any paints, varnishes, wood stains, rubber base paint and paint enamels, or similar products, including additives, anywhere in the United States or Canada.

This court will enter an order dismissing the complaint without prejudice to plaintiff's right to apply for such registration. Whether it should be put in Class 16,[3] "Protective and Decorative Coatings", or in Class 6, "Chemicals and Chemical Compositions", or some other class need not now be considered by the court.

■ Defendant has not met the burden of proof resting on it to show that it is entitled to an injunction at this time. No confusion or likelihood of confusion under the present methods of distribution has been shown. But there is a possibility of confusion in the future. So long as plaintiff sells under the DUROX mark it should either (a) refrain from selling directly or indirectly to or through stores which sell house paints or other paints for use by the general public, or (b) modify its labels on DUROX L-98, DUROX S-88, and any similar or other paint products now or hereafter sold, to show that they are being offered only for use in painting motor vehicles. No similar limitation need be made with respect to such products as the fiberglass repair kit.

This court will dismiss the counter-claim without prejudice to defendant's renewing its request for an injunction if in the future it can show that plaintiff is offering its additives or other paint products through channels and by use of methods which are likely to cause confusion of source.

---

3. See 37 C.F.R. 6.1, Schedule of Classes of Goods and Services Under the Trade-Mark Act.