**BASIC AMERICAN MEDICAL, INC., Plaintiff,**

v.

**AMERICAN MEDICAL INTERNATIONAL, INC., Defendant.**

**No. IP 84–832–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 4, 1986.

C. David Emhardt, John C. Stark, Indianapolis, Ind., for plaintiff.

Richard H. Zaitlen, Los Angeles, Cal., Richard D. Wagner, Indianapolis, Ind., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DILLIN, District Judge.

This action came before the Court for trial on the issues formed by plaintiff's complaint, the defendant's counterclaim, and the respective answers of the parties. The complaint is in six counts, charging that defendant has accused plaintiff of violating its trademark rights in "American Medical International," that plaintiff's name is confusingly similar to defendant's name, and that plaintiff is violating defendant's service mark. It asserts that it is being damaged by such accusations and seeks a declaratory judgment of its rights, pursuant to 28 U.S.C. §§ 2201 and 2202, that the use of the words "American Medical" in its corporate name is not in violation of any rights of the defendant pursuant to the trademark and unfair competition laws of the United States, 15 U.S.C. §§ 1051 through 1127, nor to similar State laws, anti-dilution acts, or deceptive trade practices acts. It further seeks a declaration that its name and service mark, as used in its business, is not confusingly similar to defendant's service mark "American Medical International, Inc.," that laches bars the defendant from asserting a claim of conflict between their respective marks, that defendant has abandoned its mark "American Medical International," that it has a right to use its name and service mark

"Basic American Medical, Inc.," and that defendant should be enjoined from interfering with its use of such name.

The defendant filed a routine answer in admission and denial, and a counterclaim in five counts charging, respectively, trademark infringement, 15 U.S.C. § 1114, common law trademark infringement, false designation of origin and description, 15 U.S.C. § 1125, Indiana and other state law trademark dilution, and unfair competition. It claims that plaintiff's name and service mark "Basic American Medical, Inc." infringes its service mark "American Medical International." It also asserts that plaintiff has advertised and promoted the sale of its services utilizing the service mark "BAMI," which infringes defendant's registered service mark "AMI." It seeks injunctive relief, accounting, and damages. Plaintiff has answered the counterclaim in admission and denial, and has filed the affirmative defense of laches.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 2201, 2202, and its pendent jurisdiction. Venue is proper under 28 U.S.C. § 1391(c).

Having heard the evidence, and considered the briefs of counsel, the Court makes its findings of fact and conclusions of law, as follows:

*Findings of Fact*

1. Plaintiff and counterdefendant, Basic American Medical, Inc. (hereinafter "Basic"), is an Indiana corporation with its principal place of business at 4000 East Southport Road, Indianapolis, Indiana.

2. Basic was a wholly owned subsidiary of the Indiana corporation, Basic American Industries, Inc. In December 1981, Basic American Industries, Inc. consolidated its various medical enterprises under one subsidiary. In naming this subsidiary, Basic American Industries added the word "medical" to the words "Basic American." Basic has used the name "Basic American Medical, Inc." in this judicial district and in interstate commerce ever since. Its annual revenues exceed $200,000,000.00.

3. Basic owns, operates or manages acute care hospitals, long-term care facilities, outpatient surgical centers and provides related health care products and services. Basic conducts business in several states, including the states of Indiana, Florida, Georgia, Alabama and both North and South Carolina.

4. Basic has used and generally uses a federally registered star logo in conjunction with its various health care facilities and services. It is ordinarily used with the full company name, as well as the phrase "Another Basic American Company," thus:

**·Basic American Medical, Inc.**
Another basic American Company

5. Hospitals which Basic owns typically carry a local facility name as the primary identifier. These hospitals are typically identified as being affiliated with Basic by use of the star logo and the statement "Another Basic American Medical Company," thus:

**Georgiana Community Hospital**

Another
Basic
American
Medical
Company

6. In Basic's color advertising, the rays emanating from the star are colored red, the star, snake and the vertical pole or post are white, and the base is a dark blue.

7. Basic's stock is traded on the over-the-counter market and Basic uses the letters "BAMI" as its National Association of Securities Dealers Automated Quotation System (NASDAQ) symbol. Defendant's stock is traded on the New York Stock Exchange under the symbol "AMI".

8. The term "BAMI" is also used by Basic as an abbreviation for "Basic American Medical, Inc." in the body of documents (such as contracts) after the full name, "Basic American Medical, Inc." has been used. It is sometimes used by its own office personnel and a few of its business contacts in referring to the company. In such cases the acronym is pronounced "Bammy."

9. Defendant and counterclaimant, American Medical International, Inc. (hereinafter "AMI"), is a Delaware corporation with its principal place of business at 414 Camden Drive, Beverly Hills, California. AMI's business is national and international in scope with 1984 revenues in excess of two billion dollars. It does business in the six states mentioned in finding 3, and in many others.

10. After the adoption of its corporate name in 1972, AMI adopted and federally registered the acronym "AMI." Registration was also obtained for the combination of the term "AMI" and a shaded medical cross. This combination of name and design was adopted as AMI's logo ("AMI logo"), as follows:

11. In AMI's color advertising, the letters AMI are typically printed in blue, somewhat brighter than Basic's blue, the cross is white, and the shading around the cross is gray.

12. AMI has taken steps to become known as "AMI" and to be recognized by its AMI logo. In AMI's "Graphics Manual," which details the proper style and configuration of its registered marks and serves as the controlling document for all advertising and promotional efforts, AMI has stated:

> Basic to the identity program is management's decision to use the initials "AMI" as the company's name for communications purposes. The company's full name—American Medical International, Inc.—will be used primarily for legal purposes, and as an explanation of the initials until "AMI" alone is well-established in the minds of our audiences.

13. The term "AMI" or the AMI logo are used solely in many of AMI's advertisements. Consequently, the term "American Medical International" is not used at all in many of AMI's advertising efforts.

14. There is no similarity between the star logo of Basic and the cross logo of AMI.

15. Under the mark "AMI" and under the AMI logo and in a few instances under

the name "American Medical International, Inc.," AMI offers a wide variety of services and related products to the health care industry, including the ownership and management of hospitals.

16. Hospitals which are owned or managed by AMI use a local hospital name as their primary identifier. Reference to AMI is ordinarily by use of the AMI logo, thus:

17. The manner in which the parties identify their hospitals is substantially different.

18. In referring to AMI orally, its personnel, advertising agencies, etc., call it by its separate initials A.M.I. (as in IBM or AT & T). It has no oral identity such as "Aimee," "Ahmee," or "Ammy."

19. There is no similarity of sound as between "A.M.I." and "Bammy."

20. Since the filing of this action, AMI has brought out a health insurance plan which it calls AMICARE, the service mark for which is as follows:

**AMICARE** SM

America's new health care plan

21. AMICARE is pronounced "Ammycare" or "Ammicare," rather than "A.M.I. Care." Its first advertisement appeared in 1985.

22. Basic does not have any product or service identified as "BAMICARE," "BASICARE," or the like.

23. Other than by the acronym A.M.I., AMI is also referred to in abbreviated form by itself and others as "American Medical."

24. Other than the infrequent in-house reference to itself as "Bammy," Basic is primarily referred to by itself and others in abbreviated form as "Basic," or "Basic American." It does not advertise or otherwise try to sell its services under the acronym "BAMI."

25. Basic does not refer to itself in abbreviated form as "American Medical," nor do others.

26. On November 28, 1983, AMI filed an application in the United States Patent and Trademark Office to register the service mark AMERICAN MEDICAL INTERNATIONAL.

27. The foregoing application was initially rejected by the Examiner under Section 2(e) of the Trademark Act, 15 U.S.C. § 1052(e) as merely descriptive.

28. Following rejection, AMI amended said application to disclaim the exclusive use of the term "medical," apart from the mark, and to request registration in accordance with Section 2(f) of the Act, 15 U.S.C. § 1052(f).

29. In March, 1985 the Patent and Trademark Office published the mark for opposition, for registration under Section 2(f). Basic is opposing registration.

30. The words "american" and "medical" and the combination "american medical" have been and are commonly and widely used in the health care industry for many entities and in particular as part of company names for numerous companies which offer health care goods and services throughout the United States.

31. AMI spends several million dollars per year in advertising, primarily promoting the AMI logo and, for the past year, the AMICARE program.

32. Basic also advertises extensively, although on a lesser scale than AMI.

33. It is AMI's hope and plan to publicize the acronym "AMI" and the cross logo to such an extent that the same would become the sole identifier of the company, as the initials IBM or the initials AT & T stand for those companies.

34. AMI's present use of "American Medical International" is miniscule; however, the mark has not been abandoned inasmuch as it usually appears a time or two in small type in current advertising—mainly to reflect ownership of the copyright.

35. The parties are engaged in offering similar services to the health care industry including the operation and management of hospitals. In two instances, the parties conduct business within the same city (Ft. Myers and Kissimmee, Florida). However, the services offered in these instances are not identical.

36. The parties are also both engaged in the purchase of health care facilities. The purchasing process is known by the parties as an "acquisition." In hospital acquisitions, the parties to this litigation are in the role of buyers, not sellers. The sellers of hospitals are typically professionals, including lawyers, accountants, community leaders and the like.

37. Acquisitions involve very large dollar dealings on the order of millions of dollars, extending over several weeks, if not months. Lawyers and accountants are typically involved for both the buyer and the seller in the process of acquisitions.

38. The parties both attend and have booths at trade shows, both attend meetings of the American Hospital Association and similar trade organizations, and to some extent, advertise in the same magazines.

39. The evidence discloses but a single instance of actual confusion between the two multi-million dollar companies. The basis of the confusion was not established.

40. On March 16, 1984, AMI advised Basic that there was a likelihood of confusion between the corporate names. AMI insisted that Basic cease any further use of the words "american" and "medical" in any names identifying Basic's organization.

41. There is no evidence that the hospital services of either the plaintiff or the defendant draw patients from any but the local area in which such hospitals are situated.

42. Plaintiff adopted its name in good faith, as a logical development from "Basic American Industries, Inc.," of which it was once a part.

43. Plaintiff, in adopting its name and service marks, did so without any intent to copy, infringe, trade upon, or otherwise illegally to use or abuse any of the defendant's trade or service marks, or to dilute the quality of such marks or deceive the public in any way.

44. The defendant is not guilty of laches in pursuing its counterclaim.

45. The witness Sorenson's $50,000.00 survey is unreliable for many reasons including, but not limited to, the fact that it admittedly could not be extrapolated to the general universe, that the list of interviewees was obtained from AMI, that the list included financial analysts who had requested 10(K) reports from AMI, and that it included doctors and hospital administrators who were and are AMI staff.

46. Having observed the demeanor of the witness Sorenson, having heard his testimony on direct and cross-examination, and having examined the pertinent exhibits received in evidence, the Court finds his testimony to be incredible.

47. Nowhere in the pleadings or pretrial proceedings did the defendant claim any rights in, or infringement of the term "American Medical" standing alone. The Court in a pretrial ruling ruled that there was no issue on this point and that the Court would receive testimony concerning

the words "American Medical" only on the issue of possible confusion.

48. There is no likelihood of confusion between the respective marks of the parties.

49. The following conclusions of law, insofar as they may be considered findings of fact, are so found.

## Conclusions of Law

■ As summarized by Chief Judge Markey in *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976), the test under the statute, 15 U.S.C.A. § 1114(1), is likelihood of confusion. In the consideration of evidence relating to trademark infringement a court must consider the interests of the consuming public, whose interests are paramount. Hence infringement is found when the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public. Infringement does not exist, though the marks be identical and the goods very similar, when the evidence indicates no such likelihood.... Marks must be compared in the light of what occurs in the marketplace, not in the courtroom.

The parties agree that the relevant factors to be considered in the determination of likelihood of confusion are as stated in *Helene Curtis Industries v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir.1977). These factors are:

1. The degree of similarity between the marks in appearance and suggestion;
2. The similarity of the products (or services) for which the name is used;
3. The area and manner of concurrent use;
4. The degree of care likely to be exercised by the consumers;
5. The strength of the complainant's mark;
6. Actual confusion; and
7. An intent on the part of the alleged infringer to palm off his products (or services) as those of another.

We will consider each of them.

■ Several of the factors may be answered quickly. The parties do offer similar services to the public, and are competitive in acquiring additional hospitals and staff. In at least the five southeastern states and in Indiana they each have hospital facilities, and in two instances facilities of one sort or another (not identical) in the same city. However, despite the foregoing, actual confusion is virtually nil and is nonexistent in the six states mentioned although the companies have been operating with the common words "American Medical" in their names for nearly five years.

As to the degree of similarity between the marks in appearance and suggestion, consideration must be given to different sets of marks. In the first place, it is obvious that the star logo of plaintiff and the "AMI" and shaded cross logo of the defendant are so different that they have no points of comparison whatever. The defendant inserted a new claim into the dispute when it filed its counterclaim asserting that plaintiff was using the acronym "BAMI" in commerce, this infringing the defendant's mark "AMI." There is not a scintilla of evidence that plaintiff is using such a mark to sell its services. The occasional use of "BAMI" in office or contract shorthand would certainly not deceive the consuming public, which would not be aware of such use, and the evidence is undisputed that "BAMI," when so used, is pronounced "Bammy," as in "I went to Alabammy with my banjo on my knee," whereas "AMI" is sounded out A.M.I. as in IBM. The defendant's 1985 concept of AMICARE was not made an issue by the pleadings and in any event is unlike any service mark actually used by the plaintiff.

■ The names truly at issue are "American Medical International" and "Basic American Medical." While each name includes similar terms, the question of likelihood of confusion entails consideration of the entire marks, where and how those marks are used and whether or not there are other distinguishing aspects, such as accompanying logos. *James Burrough Ltd. v. Lesher*, 309 F.Supp. 1154, 163 U.S.

P.Q. 208 (S.D.Ind.1969). *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 U.S.P.Q. 563 (CCPA 1973).

AMI typically uses the mark "AMI," usually accompanied by the shaded medical cross design in connection with the advertising and promotion of its company and services and in some instances also uses the full name "American Medical International, Inc." Basic typically uses its star logo accompanied by its full name or the slogan "another Basic American Medical Company." The only commonality between the two marks are the terms "American" and "Medical," which are descriptive terms that are used by a large number of other entities in the health care field. Consequently, the comparison of the names should be between the word "Basic" as the first word and "International" as the trailing word. There does not exist a likelihood of confusion. *Flintkote Co. v. Tizer*, 158 F.Supp. 699, 115 U.S.P.Q. 3 (E.D.Pa.1957); *Mary Kay Cosmetics v. Societe Anonyme Laboratoire Rene Guinot*, 217 U.S.P.Q. 975 (TTAB 1981); and *Roux Laboratories, Inc. v. Kaler*, 214 U.S.P.Q. 134 (TTAB 1982).

■ AMI may be able to establish secondary meaning in "American Medical International" as an entirety, but because of the descriptive nature of each term within the entire name, the mark must be given a very small scope of protection. The limitation of the strength of the mark is especially justified when, as here, the field in which the mark is used is flooded with company names which incorporate the various descriptive terms incorporating the name. *Puma-Sportschuhfabriken Rudolf Dassler K.G. v. Superga S.P.A.*, 210 U.S. P.Q. 316 (TTAB 1980); *In re The Lucky Company*, 209 U.S.P.Q. 422 (TTAB 1980); *Sure-Fit Products Co. v. Saltzson Drapery Co.*, 254 F.2d 158, 45 CCPA 856, 117 U.S.P.Q. 295 (1958).

The relevant "markets" for the two corporations are various. They compete, or may compete, for the acquisition of hospitals, for the acquisition of staff, and—if they ever have facilities offering the same services in a single community—they will compete for the use of such facilities by the public. As we have found, acquisition of hospitals involves negotiations over time, using the services of lawyers, accountants, and other experts by both buyer and seller. The possibility of confusion in these situations is nil, in our judgment. Confusion by members of the medical profession is equally unlikely.

With regard to the consuming public—whether outpatients or hospitalized persons—both parties put emphasis on the local names of their facilities, accompanied by their respective logos, in signage and other advertising, rather than their corporate names. Further, we know judicially that patients using hospital services are ordinarily referred to a particular hospital or clinic by their physicians or, in the case of industrial accidents, by their workers compensation insurance carriers. Many health care programs likewise reserve the right to select the provider of medical services. In the health field, the highest degree of care is exercised by physicians and referring insurers, etc. We therefore see no likelihood of confusion here, and indeed there is no proof of any confusion by members of the public in the two cities where both do business.

The defendant suggests that there may be confusion because of the stock symbols of the respective parties. Inasmuch as the stock of the two companies is traded on different exchanges, the number of letters in each symbol is different, and the pronunciation of the common letters is not the same, we once again conclude that there is no likelihood of confusion. We regard this contention to be frivolous in view of the fact that purchasers of stock, other than professionals, buy and sell stock by name rather than by symbol. Professionals may be expected to use a sufficient degree of care to know the difference.

Finally, as we have found, there is no proof of intent on the part of plaintiff to pass itself off as the defendant, or to sell its services as those of the defendant. What really happened is that the defend-

ant, after doing business for many years under the name American Medical International without having the courage to attempt to register that under the Lanham Act, finally decided to try to register its descriptive name, and in the process, to bulldoze every company turned up by its search which used the name "American" or "Medical" or "American Medical." In this instance, at least, we conclude that it has failed.

We find and conclude that the law is with the plaintiff on the first five counts of its complaint, except to the extent that it has asserted in Count I that the defendant is barred by laches from making its assertions. The law is with the defendant as to Count VI of the complaint. We further find and conclude that the defendant has failed to carry its burden of proof as to each cause of action stated in its counterclaim, and that it should take nothing by reason of said counterclaim. We finally find and conclude that plaintiff has failed to carry its burden of proof that it is entitled to recover its attorneys fees.

Judgment will be entered in accordance herewith, granting the plaintiff injunctive relief, as prayed for.

### JUDGMENT

The Court having this day filed its findings of fact and conclusions of law in the above action, reading as follows: (H.I.), now therefore,

IT IS CONSIDERED, ADJUDGED, DECLARED AND DECREED as follows:

1. Plaintiff's corporate name and service mark, "Basic American Medical, Inc." does not violate defendant's rights under the trademark laws of the United States or any other laws.

2. Plaintiff's corporate name and service mark, "Basic American Medical, Inc." as used in plaintiff's business is not confusingly similar to or in conflict with defendant's service mark "American Medical International, Inc."

3. Plaintiff has the right to use, in connection with health care services and facilities, its corporate name and service mark, "Basic American Medical, Inc.," free from interference by defendant, its officers, agents, servants, employees, attorneys, privies, representatives, successors, assigns, and any and all persons acting by, through, or under authority from defendant, either separately or jointly, in the United States or in any foreign country where the activities of plaintiff or defendant have a substantial effect on interstate or foreign commerce.

4. Defendant, its officers, agents, servants, employees, attorneys, privies, representatives, successors, assigns, and any and all persons acting by, through, or under authority from defendant, either separately or jointly, are permanently enjoined from:

a. Interfering with or threatening to interfere with the use of the corporate name and mark, "Basic American Medical, Inc.," by plaintiff, its related companies, successors, or assigns in connection with its or their business.

b. Instituting or prosecuting any suit or other proceeding placing in issue the right of plaintiff or said related companies, successors, or assigns, to register or use the corporate name and mark, "Basic American Medical, Inc.," in connection with health care services and facilities.

IT IS FURTHER CONSIDERED AND ADJUDGED that the defendant take nothing by its counterclaim.

IT IS FINALLY CONSIDERED AND ADJUDGED that the defendant pay all taxable costs of this action.